THE STATE EX REL. STATE HIGHWAY COMMISSION, Appellant, v. E. JEFF GORDON ET AL.—36 S. W. (2d) 105.

Court en Banc, March 3, 1931.

:

*John W. Mather* and *Ralph M. Eubanks* for appellant.

Baker & Baker for respondents.

RAGLAND, C. J.—This is a condemnation proceeding. From the pleadings it appears that the State Highway Commission acquired by condemnation a right of way through respondents' land for the state highway from the Boone-Callaway County line to South Cedar City in 1923. The present proceeding was commenced in February, 1930, for the purpose of acquiring a right of way over respondents' land for the same state highway. It appears, however, from the petition, and the profile map filed with it, that the parcel of land included within the right of way now sought contains 3.59 acres, 2.38 lying in the "present road" and the 1.21 being new land. In other words, the right of way across respondents' land which the commission now seeks to acquire deviates but slightly from the course of the one originally marked out and appropriated by it.

Respondents filed a plea in bar to the petition. The plea raises but one question, namely, whether the commission, having once exercised its power to condemn a right of way for a state highway over and across respondents' land, has the power to condemn another right of way thereover for the same highway.

The circuit court sustained the plea and gave judgment accordingly. From such judgment the commission appealed.

The power of eminent domain is inherent in sovereignty and exists in a sovereign state without any recognition of it in the Constitution. Constitutional provisions relating to the taking of property are but limitations upon a power which would otherwise be

without limit. [10 R. C. L. 11.] The right to exercise the power, or to authorize its exercise, is wholly legislative. When an agency of the State asserts that the right to exercise the power has been delegated to it, it must be able to point out a statute which in express terms or by clear implication authorizes such exercise and to the extent claimed. There is no constitutional question involved in this case. But as respondents deny appellant's power to make a further appropriation of their land, the title to real estate is involved, and that is the ground of this court's jurisdiction of the appeal.

As already forecast, the question of whether appellant in condemning a right of way over respondents' land for the Columbia-Jefferson City State Highway in 1923 exhausted its power with reference thereto, or whether it can condemn another and different right of way over the same land for the same highway, abandoning that first condemned, must be resolved by a consideration of the relevant statute or statutes.

The Centennial Road Law, enacted in 1921 (Laws 1921, 1st Ex. Sess., p. 131 et seq.), created and established a state-wide system of hard-surfaced public roads extending into each county of the State, to be located, acquired, constructed, reconstructed and improved and ever after maintained as public roads. The state highway system so created was not made up of roads existing at the time of the passage of the act, but of roads to be located, acquired, etc., along routes to be surveyed by the State Highway Engineer between designated points. In 1929, eight years after the creation of the state highway system, after the roads constituting the system had been for the most part surveyed and marked out, and after a considerable part of the construction had been accomplished, the Legislature amended Section 21 of the Act to read (so far as pertinent here) as follows:

"Sec. 21. The state highway commission shall have power to purchase, lease, or condemn, lands in the name of the State of Missouri for the following purposes when necessary for the proper and economical construction and maintenance of state highways:

"(1) Acquiring the right-of-way for the location, construction, reconstruction, widening, improvement or maintenance of any state highway or any part thereof. . . .

"(3) Acquiring the right-of-way for the location, construction . . . or maintenance of any highway ordered built by the bureau of public roads of the department of agriculture of the United States Government. . . .

"(5) Changing gradients in any state highway.

"(6) Establishing detours in connection with the location, construction, reconstruction, widening, improvement or maintenance of any State highway or any part thereof. . . .

"(13) Acquiring lands for any other purpose necessary for the proper and economical construction of the state highway system for which the commission may have authority granted by law . . ." [Laws 1929, p. 366.]

It will be noted that the highways, for the proper and economical construction and maintenance of which the power of condemnation is conferred by this section, are not limited to those which have not been previously located, acquired and constructed. On the contrary the power is given for the purpose of acquiring the right of way for the location, construction, reconstruction, widening, improvement or maintenance of any state highway or any part thereof, or for changing the gradients in any state highway. Very clearly the words "any state highway" cannot be restrained to mean merely public roads which happen to lie along the routes of the designated state highways and which have not been reconstructed, widened or improved. Acquiring right of way for the reconstruction or improvement of a highway implies in many situations a change in the location at the point of reconstruction or improvement; acquiring right of way for the purpose of changing gradients in a highway necessarily involves a relocation. And changes in locations, however slight, make necessary a further exercise of the power of condemnation, that is, if the compensation for the new land required cannot be agreed upon.

Mistakes will happen in engineering as well as in other work, and such mistakes may not be discovered until after the location of the road. Said Section 21, considered in connection with the act as a whole, clearly implies that, whenever experience or changed circumstances demonstrate that minor changes in the location of a state highway are necessary for proper construction and economical maintenance, such changes shall be made. Another fact of a historical nature must have been in the legislative mind in the enactment of the new Section 21 in 1929. When the Highway Commission was organized soon after its creation in 1921, it was confronted with the gigantic task of locating, acquiring and constructing a state-wide system of hard surfaced connecting highways. The funds available for the work as compared with the magnitude of the undertaking were meager. Along the designated routes of the highways there were in some instances public roads which followed the cow paths of earlier days with their abrupt turns and precipitous climbs. In the interest of economy of both time and money the commission was forced to adopt many of these roads as and for the locations of state highways. After the system was adopted and the work of construction was well on the way toward completion, and ample funds having in the meantime become available, it was desirable that the dangerous curves and difficult grades of earlier

locations be eliminated. It was in fact necessary that that be done if the purpose of the original act was to be fully realized; that purpose was the establishment, construction and economical maintenance of a state wide system of highways adequate in all respects for the requirements of modern travel and transportation. The considerations just mentioned are the ones, no doubt, which led the Legislature in 1929 to broaden the scope of the power of condemnation which had theretofore been conferred upon the State Highway Commission.

At the same session at which Section 21 of the State Highway Act was repealed and said new Section 21 enacted in lieu of it, but later in the session, the Legislature passed another act dealing with relocations in state highways. [Laws 1929, p. 226.] The first section of this latter Act is as follows:

"The state highway commission is hereby authorized to make minor relocations in any state highway or any part thereof when in its opinion such minor relocations are necessary in the interest of safety to the traveling public or in the interest of economy and directness of route, provided that no such minor relocations shall deviate from any designated point named in any law which may now or hereafter be in force. Provided, however, the terms, powers and authority herein granted shall apply only when the conditions exist as enumerated in sections 2, 3 and 4 hereof."

Section 2 of the Act provides that whenever the construction or operation of any water power or hydro-electric projects results in the inundation of any portion of the state highway, the commission is authorized to abandon said portion and relocate, construct and maintain so much of said highway as in its judgment is necessary on account of such inundation. Section 3 empowers the commission to negotiate and agree to a settlement of the damages resulting to any highway from any such inundation. Section 4 authorizes county courts to make settlement where roads other than state highways are inundated.

It is the contention of respondents that by the express provisions of Section 1 the authority of the commission to make relocations in state highways is limited to situations in which a portion of a highway is inundated through the construction or operation of a water power or hydro-electric project. It is true that the section down to the last proviso purports to grant to the commission in the broadest terms the power to make minor relocations, but by the proviso limits the exercise of the power to conditions enumerated in sections 2, 3 and 4. As already pointed out the previously enacted new Section 21 of the State Highway Act had by the clearest implications conferred upon the commission the power to make minor relocations for the purpose of reconstructing or improving state highways or

changing their gradients. Was the proviso of Section 1 of the later act intended to withdraw that power? Clearly not. The proviso by its express terms operates merely to limit "the power and authority herein granted." It could not reasonably perform any other function. [See Castilo v. State Highway Commission, 312 Mo. 244, 267, 279 S. W. 673.] It is manifest that the later act, considered as a whole, was intended to confer upon the commission an additional power with respect to relocations—the power to relocate where the highway was inundated as the result of the construction or operation of a water power project, and not to restrict or withdraw the power theretofore granted.

As the only defense pleaded to plaintiff's action was the alleged lack of power to make any relocations of the highway on defendants' land, and as a consequence a lack of power to acquire a right of way therefor by condemnation, plaintiff's demurrer to the answer (the plea in bar) should have been sustained.

The judgment of the circuit court is reversed and the cause remanded to be further proceeded with in accordance with the prayer of the petition. All concur.