W. B. LOGAN, TORMEY JENKINS, E. S. CIRCLE, JAY HIGGINBOTTOM, R. L. PLUMMER, TOM PARIS, S. G. EDWARDS, E. F. KERR, E. W. FINK and S. A. BROWNING, Appellants, v. C. D. MATTHEWS, R. S. BROWNLEE, JESSE McDONALD, W. H. PHARES, State Highway Commission of Missouri.—52 S. W. (2d) 989.

Court en Banc, September 2, 1932.

1214

*Lou C. Lozier, Irwin & Bushman* and *Paul D. Kitt* for appellants.

*John W. Mather* and *John C. Collett* for respondents.

FRANK, J.—This suit was instituted in the Circuit Court of Cole County by resident citizens and assessed taxpayers of the counties of Livingston and Carroll to enjoin the State Highway Commission from locating and constructing Highway No. 65 through said counties so as to miss the towns of Avalon and Tina. The court below sustained a demurrer to the petition. Plaintiffs declining to further plead, judgment went against them and they appealed.

The road in question is not a part of the 1,500 miles of higher type roads which Section 29 of the Centennial Road Law authorizes the Commission to locate.

The first ground of the demurrer is that plaintiffs have no legal capacity to sue.

The petition alleges that plaintiffs are resident citizens and assessed taxpayers of the counties of Livingston and Carroll in the State of Missouri, and that they bring and prosecute this suit for and on behalf of themselves and all other resident citizens and taxpayers of the State of Missouri similarly situated and interested as such in the cause of action hereinafter set out. This exact question was decided contrary to demurrant's contention in the case of Castilo v. State Highway Commission, 312 Mo. 244, 260, 279 S. W. 673. We are satisfied with what was there said without further discussion.

The next ground of the demurrer is that the petition does not state facts sufficient to constitute a cause of action.

The determination of this ground of the demurrer involves a construction of certain pertinent statutes. We will refer to these statutes as numbered in the 1929 revision. Section 8120 reads as follows:

"There is hereby created and established a state wide connected system of hard surfaced public roads extending into each county of the state, which shall be located, acquired, constructed, reconstructed, and improved and ever after maintained as public roads, and the necessary grading, hard surfacing, bridges and culverts therefor shall be constructed by the State of Missouri. Such state wide connected system of hard surfaced roads shall be known as the 'state highway

system,' and consist of highways along the following described routes:"

The statute then proceeds with a description of the routes in each county in the State.

That part of the road in Livingston County is described by this statute as follows:

"Beginning at the Livingston-Grundy County line, thence in a southeasterly direction through Farmersville, Chillicothe and Avalon to the Livingston-Carroll County line." ·

That part of the road in Carroll County is described thus:

"Beginning at the Livingston-Carroll County line, thence south through Tina to Carrollton."

 It will be noted that the statute describes this road as going through the towns of Avalon in Livingston County and Tina in Carroll County. Plaintiffs contend that as the statute routes the road through the towns of Avalon and Tina, the Highway Com mission has no authority to locate and construct it on a route that will miss these designated towns. On the other hand the commission says that the Federal Government refused to allow Federal aid on the road unless it was routed on a direct north and south line two miles west of the towns of Avalon and Tina. It is the contention of the commission that the Missouri statutes authorize it to route the road as required by the Federal Government in order to secure Federal aid. The statutes upon which the commission relies to support its contention are, among others, Sections 8092 and 8106. They read respectively as follows:

"That assent is hereby given to an act of the congress of the United States, entitled: 'An act to provide that the United States shall aid the states in the construction of rural post roads and for other purposes.'"

"The commission is hereby directed to comply with the provisions of any act of congress providing for the distribution and expenditure of funds of the United States appropriated by congress for highway construction, and to comply with any of the rules or conditions made by the bureau of public roads of the department of agriculture, or other branch of the United States government, acting under the provisions of federal law in order to secure to the state of Missouri funds allotted to this state by the United States government for highway construction. . . ."

Plaintiffs contend that if it should be conceded that the Highway Commission had authority to make a change in the location of the road when required by the Federal Government, whether or not the Federal Government had requested such a change would be a question of fact to be determined on the trial of the case, and could

not be determined on a demurrer to the petition. There would be merit in plaintiffs' contention if this fact did not appear from the face of the petition. The petition alleges that the commission made the following order on April 14, 1931:

"Location of Route 65, Carroll and
Livingston Counties.

"Mr. Powers, Engineer of Surveys and Plans, presented the following resolution concerning the change in location of U. S. 65 between Tina and Avalon, in Carroll and Livingston Counties.

"Whereas, Section 29 of the Centennial Road Law described a north and south highway in Livingston County in the following manner: Beginning at the Livingston-Grundy county line, thence in a southerly direction through Farmersville, Chillicothe and Avalon to the Livingston-Carroll county line and also designates a north and south road in Carroll County in the following manner: Beginning at the Livingston-Carroll county line, thence south through Tina to Carrollton, and

"Whereas, the State Highway Commission has completed a survey for the above routes in accordance with Section 29 of the Centennial Road Law, and has submitted to the U. S. Bureau of Public Roads of the Department of Agriculture a project statement showing the routing of the road through the towns of Avalon and Tina, and

"Whereas, the U. S. Bureau of Public Roads of the Department of Agriculture has refused to allow Federal Aid on this route unless the State Highway Commission would change the location of the south three and one-half miles in Livingston County, and the north five and one-half miles in Carroll County to run due north and south on a line two miles west of the towns of Avalon and Tina, and

"Whereas, The State Highway Commission is directed under Section 16 of the Centennial Road Law to comply with the provisions of any act of Congress providing for the distribution and expenditure of funds of the U. S. Government appropriated by Congress for highway construction, and to comply with any of the rules and conditions made by the U. S. Bureau of Public Roads of the Department of Agriculture or other branch of the U. S. Government acting under the provisions of the Federal Law in order to secure to the State of Missouri funds allotted to this State by the U. S. Government for highway construction,

"Therefore be it resolved that the State Highway Commission directs the Chief Engineer to make a new survey in conformance with the wishes of the U. S. Bureau of Public Roads of the Department of Agriculture and to prepare plans for the construction of the road and submit them to the U. S. Bureau of Public Roads of the Department of Agriculture for final approval in order to insure continuance of Federal Aid allotments to the State of Missouri.

"Upon motion made by Mr. Phares, seconded by Mr. McDonald, the above resolution was unanimously adopted.

"The above was approved by Mr. Buehler."

In view of the allegations in the petition, the question of the commission's authority to comply with requirements made by the Federal Government in order to secure Federal aid, is raised by the demurrer to the petition.

There is no doubt but what the Bureau of Public Roads of the Department of Agriculture is authorized by the Federal Highway Act to require changes or revisions of the routing of roads as a condition to the granting of Federal aid, and to refuse Federal aid unless the required conditions are complied with. [U. S. C. A. Title 23, Highways, secs. 1-53.] The question we have to determine is whether or not Section 8106, Revised Statutes 1929, authorizes the State Highway Commission to comply with conditions required by the Federal Government, where, as in this case, the required conditions, if complied with, would cause the road to miss designated points through which Section 8120, Revised Statutes 1929, says the road shall run.

The two sections of the statute should be read and construed together. In construing a statute the court, must, if possible, give effect to the whole and every part thereof, provided the interpretation reached is reasonable and not in conflict with the legislative intent. [Castilo v. State Highway Commission, 312 Mo. 244, 264, 270 S. W. 673.] Section 8120 provides that the road in question shall run through the towns of Avalon and Tina. The Federal Government refused to allow Federal aid on the road unless the routing thereof was changed so as to run on a direct north and south line between the towns of Chillicothe and Carrollton, which change would locate the road two miles west of the towns of Avalon and Tina. Section 8106, supra, directs the commission to comply with any Act of Congress, and with any rules or conditions made by the Bureau of Public Roads of the Department of Agriculture, or other branch of the United States Government in order to secure to the State of Missouri funds allotted to this State by the United States Government for highway construction. It appears clear from the provisions of this statute that the purpose of the Legislature was to secure all of the funds allotted to the State by the Federal Government for road construction, and in order to accomplish that result it directed the State Highway Commission to comply with any of the rules or conditions made by the Federal Government.

Plaintiffs contend that this statute, when read in connection with the Federal Highway Act directs the State Highway Commission to comply with the rules and conditions made by the Federal Government as to the manner and method of construction of the highways

but does not authorize a change of the location of the highway so as to deviate from the towns through which the statute says the road shall run.

We do not agree with plaintiffs' interpretation of this statute. The comprehensive language of the statute will not admit of the limited construction contended for. If the Secretary of Agriculture is authorized by the Federal Highway Act to require a change in the location of the road as a condition to granting Federal aid, of which there is no doubt, and the State Highway Commission would refuse to comply with the requirements made, and thus lose Federal aid on the road, then the intention of the Legislature would be defeated because by Section 8106 it specifically directs the Highway Commission to comply with *any condition* made by the Federal Government in order to secure Federal aid. A reasonable construction of the Federal Highway Act justifies our conclusion.

█ According to Section 6 of this act, the first step the State Highway Commission must take is to submit or designate a system of roads upon which it expects to ask Federal aid, and the Secretary of Agriculture is authorized to require modifications or revisions of the system as designated by the Highway Commission. Section 6 of this act provides that, "Before any projects are approved in any State, such State, through its State highway department shall select or designate a system of highways not to exceed 7 per centum of the total highway mileage of such State as shown by the records of the State highway department. . . . The Secretary of Agriculture shall have authority to approve in whole or in part the system as designated or to require modifications or revisions thereof." [U. S. C. A., Title 23, Highways, sec. 6.] Evidently the Secretary of Agriculture's approval of the system of roads designated by the State Highway Commission is a general approval of a system of roads upon which the government is willing to grant Federal aid, provided that when any road in such designated system is proposed to be improved, the specific location of the road and the plans and specifications showing the character of the improvement meet with the approval of the Secretary of Agriculture. We say this because it appears from later provisions of the Federal Highway Act that when the State desires to improve any particular road in the system theretofore designated, it must submit to the Secretary of Agriculture, for his approval, a project statement setting forth proposed construction or reconstruction of the road proposed to be improved.

Section 12 of the Federal Highway Act provides that "Any State having complied with the provisions of this chapter, and desiring to avail itself of the benefits thereof, shall by its State highway department submit to the Secretary of Agriculture project statements

setting forth proposed construction or reconstruction of any primary or interstate or secondary or intercounty highway therein. If the Secretary of Agriculture approves the project, the State highway department shall furnish to him such surveys, plans, specifications, and estimates thereof as he may require." This section seems to contemplate that the Secretary of Agriculture may either approve or disapprove the project statement for the construction of any designated road, before he sees the plans, specifications and estimates therefor, because the statute provides that if the Secretary of Agriculture approves the project, the State highway department shall furnish to him such surveys, plans, specifications and estimates therefor as he may require. The fact that the Secretary of Agriculture may approve or disapprove a project statement for construction of a designated road before the plans, specifications and estimates therefor are furnished to him, clearly shows that the approval of a designated system of roads as provided for in Section 6, is a tentative approval of a general system of Federal Aid Roads, without regard to specific location or character of construction which are to be determined as each particular road in the designated system is improved.

Section 8120, Revised Statutes 1929, which describes the general direction of the roads and designates the towns through which they shall run, and Section 8106 which directs the commission to comply with any rule or condition made by the Bureau of Public Roads of the Department of Agriculture in order to secure Federal aid; when read and construed together, as they should be, direct the commission to locate and construct the roads through the towns designated in Section 8120, except on Federal Aid Roads where the Bureau of Public Roads requires a change in location as a condition to allowing Federal aid, in which event the commission shall comply with such requirement in order to secure Federal aid.

This is the first time Section 8106 has been before this court for construction. A like question was before the Supreme Court of South Carolina in the case of Eargle et al. v. Richland County Permanent Roads Commission, 116 S. E. 445. In that case the statute created the Richland County Permanent Roads Commission and directed such commission to construct with some durable material, among others, The Newberry Road. The statute further provided that in the construction of such roads the commission might co-operate with the State Highway Department and the Federal Government, and should have power to do and perform all things necessary by way of securing the services of experts, and in securing such Federal and State aid as might at any time be available. When the commission came to pave Newberry Road, it adopted the road known as the Newberry

1222

Road for thirteen miles to Piedmont schoolhouse. At that point about six miles from the county line it left the old Newberry Road and selected and started to pave another road that left the Newberry Road. The new route was called the Hilton Route, and the old route was called Spring Hill Route. At the county line the two routes were three miles apart. The action was brought by residents along the Spring Hill Route for $50,000 damages and an injunction against the proposed change of route. The court below refused the injunction and dismissed the complaint. In disposing of the case on appeal, the Supreme Court of South Carolina said:

"If these highways were merely local county roads. it might be different. They were not. The Legislature was providing for a system of roads, and that system embraced the state. It is true the statute said to Richland County permanent road commission, 'You shall pave the Newberry road, but you shall have power to do so in co-operation with the state highway department, and federal government so that you may obtain state and federal aid.' The testimony is clear that the adoption of the Hilton route was necessary to obtain the state and federal aid. . . . The judgment is affirmed."

█ Plaintiff's call attention to Section 44a, Article 4 of the Constitution whereby the people authorized the issuance of one hundred thirty-five million dollars in bonds and directed the proceeds thereof to be used "To complete, widen and otherwise improve the state system of primary and secondary highways as designated and laid out under existing law."

Contention is made that the words "highways as designated and laid out under existing law" mean highways as designated by Section 8120, Revised Statutes 1929. A sufficient answer to this contention is that at the time the people adopted this constitutional amendment, Section 8106 which directs the commission to comply with any rule or condition made by the Federal Government in order to secure Federal aid, was as much a part of the existing law as Section 8120, and it must be held that the people adopted the amendment in view of both sections.

█ Plaintiffs also invoke the provisions of Section 8122, Revised Statutes 1929, which was enacted in 1929. [Laws 1929, p. 226, sec. 1.] That section reads as follows:

"The state highway commission is hereby authorized to make minor relocations in any state highway or any part thereof when in its opinion such minor relocations are necessary in the interest of safety to the traveling public or in the interest of economy and directness of route, *provided* that no such minor relocations shall deviate from any designated point named in any law which may now or hereafter be in force. *Provided however,* the terms, powers and

authority herein granted shall apply only when the conditions exist as enumerated in sections 8123, 8124, and 7869.''

It will be noted that the authority granted to the commission by Section 8122 to make minor relocations is made to apply to conditions existing as enumerated in Sections 8123, 8124 and 7869. The three sections mentioned refer to situations in which a part of the highway is inundated through the construction or operation of a water power or hydroelectric project. If we are correct in our interpretation of Sections 8120 and 8106 as authorizing the Commission to make changes in the location of roads when required by the Federal Government as a condition to granting Federal aid, Section 8122 which was enacted later would not change the situation, because we have construed Section 8122 as conferring ''upon the commission an additional power with respect to relocations—the power to relocate where the highway was inundated as the result of the construction or operation of a water power project, and not to restrict or withdraw the power theretofore granted.'' [State ex rel. State Highway Commission v. Gordon et al., 327 Mo. 160, 36 S. W. (2d) 105, 107, 108.]

In support of their contention that the commission is not authorized to locate a road so as to deviate from the towns or places through which Section 8120 says the road shall run, although required to do so by the Federal Government as a condition to securing Federal aid, plaintiffs cite the following cases: State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 42 S. W. (2d) 200; Castilo v. State Highway Commission, 312 Mo. 244, 260, 279 S. W. 673; State ex rel. County of St. Louis v. State Highway Commission, 315 Mo. 707, 286 S. W. 1; State ex rel v. State Highway Commission, 315 Mo. 747, 756, 287 S. W. 39. It will be sufficient to say of these cases that the question in the case at bar was not an issue and necessarily was neither considered nor determined in either of the cited cases.

It appears from the commission's brief that under the proposed location of the road, the towns of Avalon and Tina will be connected with the highway by the construction of concrete spurs running from each of said towns to and connecting with the paved highway. But as this fact does not appear from the petition, we have not considered it in determining the case.

For the reasons stated, the judgment below should be affirmed. It is so ordered. *White, Gantt* and *Henwood, JJ.,* concur; *Ellison, J.,* dissents in separate opinion in which *Ragland, J.,* concurs; *Atwood, C. J.,* not sitting.

ELLISON, J. (dissenting).—█ I respectfully dissent from the principal opinion, in which Section 8092 and the first 15 lines of

1224

Section 8106, Revised Statutes 1929, are quoted. From the latter it is apparent the State Highway Commission is not merely authorized to comply with acts of Congress and rules and regulations of the Bureau of Public Roads of the Department of Agriculture, but is directed to do so. Furthermore the direction is to comply with the provisions of *any* act of Congress governing the distribution and expenditure of Federal road funds, and *any* rules and regulations of the bureau. This deprives the State Highway Commission of any discretion in the matter and mandatorily obligates it to follow not only the present but any future Federal laws and regulations on the subject.

The present Federal statute, Section 6, Title 23, U. S. C. A., limits Federal aid to seven per cent of the total highway mileage of the State; and Sections 12 and 42 allow an expenditure not exceeding fifty per cent of the total estimated cost of the highway, with a maximum of $15,000 per mile. But if future acts of Congress should sufficiently increase the per centum of highway mileage to which Federal aid could be extended, the Federal Government would be in a position to dictate the routing of the whole highway system not yet constructed.

■ Section 44a, Article IV of the Constitution, adopted in 1928. authorizing the expenditure of the proceeds from the seventy-five million bond issue ''to complete and widen or otherwise improve the state system of primary and secondary highways *as designated and laid out under existing law*'' refers to the State highway system as particularly specified for each county at great length, in Section 8120. Revised Statutes 1929. [State ex rel. Russell v. State Highway Commission (Mo. banc), 328 Mo. 942, 42 S. W. (2d) 196, 200.] This section gives certain control points naming towns through which roads shall pass and this court has often held they cannot be departed from (except as to the 1500 miles of higher type road).

■ It is true Section 8106 was a part of the ''existing law'' when the constitutional amendment was adopted but the question is what the two statutes and the amendment mean. The very language of the latter in effect said the bond money should be spent on roads as the then existing law designated and laid them out. It would not, therefore, apply to roads not yet located but to be located wholly subject to the will or caprice of the Federal authorities. And if Section 8106 is a part of the existing law in the way in which the principal opinion applies it, it has become a part of the constitutional amendment so that it is beyond the reach of legislative correction.

If stubs were built to the towns of Avalon and Tina leading off of the proposed line of Highway No. 65 two miles west thereof, I do not mean to say that would not be a substantial compliance with the

statute because both towns would then be on the highway. But if the highway can be wholly diverted from these two towns, as is held in the principal opinion like deviations can be made elsewhere, limited only by the road mileage to which government money may be allotted in this State.

It is a general rule that "where two statutes are in apparent conflict, they should be so construed, if reasonably possible, as to allow both to stand and to give force and effect to each." [36 Cyc. p. 1146.] This is especially true where the statutes relate to the same subject and were enacted at the same session. [State ex rel. Moseley v. Lee, 319 Mo. 976, 992, 5 S. W. (2d) 83, 90.] The two statutes here involved, Sections 8106 and 8120, cannot be harmonized or reconciled if Section 8106 has the meaning given it by the principal opinion. For if the Congress had extended or should extend Federal aid to the whole State highway system of Missouri, it would overthrow Section 8120 entirely. Section 8106 cannot therefore be regarded as an exception or in the nature of a proviso to Section 8120 for "where the proviso is entirely contradictory and repugnant to the enacting clause, it has been declared void." [36 Cyc. p. 1163.] In my opinion Section 8106 requires the State Highway Commission to comply with congressional acts and with rules and regulations of the bureau of public roads only insofar as may be done without violating the explicit provisions of Section 8120 which designates and lays out the State highway system. The commission must follow Federal requirements as to plans and specifications, types of road and the like, and may even be controlled in the routing of the roads, provided (so far as this case is concerned) the statutory control points fixed by Section 8120 are not disregarded. *Ragland, J.,* concurs.