STATE OF MISSOURI ex rel. STATE HIGHWAY COMMISSION OF MISSOURI, Realtor, v. HONORABLE JOHN R. JAMES, Judge of the 16th Judicial Circuit of the State of Missouri, and of the Independence Division of the Circuit Court of Jackson County.—No. 40438.—205 S. W. (2d) 534.

Court en Banc, November 10, 1947.

1162

*Lue C. Lozier* and *Wilkie Cunnyngham* for relator.

*Ira B. McLaughlin* and *R. R. Brewster, Jr.,* for respondent.

1164

■ CLARK, J.—Mandamus. On petition of the State High-way Commission, relator, we issued ■ our alternative writ requiring the respondent circuit judge to accept and exercise jurisdiction of all issues tendered in a condemnation suit filed by relator in his court, or to show cause why he should not do so. Respondent made return and the cause is brought to issue by relator's motion for judgment on the pleadings.

The petition filed by relator in the circuit court is in furtherance of a plan duly adopted by the Commission for the improvement of about six miles of Highway 40 in Jackson County, by the construction of a new road, with access thereto limited to certain designated points, and by the construction of "service" roads, as to which no limitation of access is provided. The service roads are to be on each side of the limited access road and are to connect therewith at certain points. The plan contemplates the use of a portion of present Highway 40 as a part of one of the service roads. The petition seeks to condemn described private property for the purposes mentioned and, after the description of each tract proposed to be taken for the limited access road, contains a paragraph as follows:

"Except as otherwise hereinafter specifically provided, no right or easement whatsoever of use of, or direct access to, from or across the right-of-way above described or any highway now or hereafter constructed thereon, shall attach or belong to the abutting lands or to any person merely because of ownership of abutting lands."

The owners of two of the tracts sought to be condemned filed motions to strike the above quoted paragraphs from the condemnation petition. The court sustained these motions, holding that the petition otherwise stated a good cause of action, but that the Commission has no power to condemn or extinguish the easement or right of abutting owners of access to the highway and that the court lacks jurisdiction to ascertain just compensation for the extinguishment of such easement or right.

In this court respondent contends: (1) that the power to condemn the right of access has not been granted to the Commission either by constitution or statute; (2) that Article IV, Section 29, of the Missouri Constitution of 1945, if construed as granting authority to condemn such right of access, is not self enforcing.

■ That section of the constitution, referring to the Commission, reads:

"It shall have authority over and power to locate, relocate, design and maintain all state highways; and authority to construct and re-

construct state highways, subject to limitations and conditions imposed by law as to the manner and means of exercising such authority; and authority to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law.''

The section does not purport to grant the power of eminent domain, nor does any constitutional provision grant that power to the State or to any state agency, although Section 41 of Article IV authorizes the Conservation Commission to exercise the power ''as provided by law for the highway commission.'' The constitution does not *grant* the power of eminent domain. The power is inherent in sovereignty, [327 Mo. 160, 36 S. W. (2d) 105] to be exercised by such agencies, for such public purposes and in such manner as now or hereafter provided by law. The constitution limits the power and the manner of its exercise in certain respects. [Secs. 26, 28, art. I; sec. 4 of art. XI.] It also defines certain purposes as being public purposes for which private property may be condemned. [Game Conservation, secs. 40, 41, art. IV; Corporate Franchises, sec. 4, art. XI; Drains, Private Ways, etc., sec. 28, art. I; Excess Property, sec. 27, art. I; Memorials, etc., sec. 48, art. III; Slum Clearance, sec. 21, art. VI.] Constitutional provisions which limit or restrict the power of eminent domain are, of course, self enforcing. Provisions defining the purposes for which condemnation may be had are not self enforcing in the sense that they may be enforced by courts except to the extent and in the manner provided by statute. But that does not necessarily require the enactment of a new statute or the re-enactment of an old statute after the effective date of the constitutional provision. All that is necessary is that there be in force, at the time the particular interest in property is sought to be condemned, a constitutional provision or statute broad enough to authorize the condemnation of such interest and a statute to provide a reasonable method to determine just compensation therefor.

 Section 29 of Article IV does not expressly mention the subject of eminent domain. It was unnecessary to do so. The Highway Commission has the power of eminent domain by statute and the constitution recognizes that fact in Section 41 of Article IV, mentioned above. Section 29 does authorize the Highway Commission to limit access to state highways where the public interest and safety may require, subject to such limitations and conditions as *may* be imposed by law. Access to highways, even by abutting owners, is often limited by the necessary construction of cuts, fills, viaducts, etc., but Section 29 goes farther than that. It vests the Commission with authority, when it deems the public interest and safety to require, to limit access at points not made inaccessible by the nature of the road's construction.

Is that a present grant of authority, or one which does not become effective until the future enactment of law? The section says the authority is subject to such limitations and conditions as *may* be imposed by law. It is argued by relator, that the broad statutory powers of the Commission already vest it with authority·to limit access, and that the constitutional provision is but the recognition of an existing authority, with a reservation of power in the general. assembly to limit or further limit the authority. But, whether the provision is a grant of new authority to the Commission or the recognition ᐟ of an existing· authority, we think existing statutes place "limitations and conditions" upon the authority and provide adequate methods for its exercise. [All references to statutes will be to sections of Missouri Revised Statutes 1939 and Mo. R. S. A.]

Section 8759 vests the Commission with power to condemn *lands* in· the name of the State for right-of-way, etc., and "for any other·purpose necessary for the proper and. economical construction of the state highway system for which the commission may have authority granted by law." Section 8763 gives the Commission large control over the location and construction of state roads and power to make rules and regulations for the proper management and conduct of such work. Section 30 of Article IV of our Constitution says that certain funds shall stand appropriated, "without legislative action," to the Commission for a great many specified purposes and "(5) For such other purposes and contingencies relating and appertaining to the construction and maintenance of such highways and bridges as the commission may deem necessary and proper." We have held that these provisions' give the Commission large discretionary powers. [Castilo v. Commission, 312 Mo. 244, 279 S. W. 673; State ex rel. Commission v. Thompson, 323 Mo. 742, 19 S. W. (2d) 642.] Other statutes provide the method for condemning real property. Section 655 provides rules for construing statutes and says, ". . . unless such construction be plainly repugnant to the intent of the legislature, or of the context of the same statute: . . . ninth, the terms 'real property' or 'premises,' or 'real estate' or· 'lands,' shall be deemed to be coextensive with lands, tenements and hereditaments; . . ."

"An easement appurtenant to land is property subject to the power of eminent domain. . . . A statute giving the right to condemn 'land' or 'real estate' will be held to include easements, such as a right of way, especially where· the statute declares that those words shall include lands, hereditaments, and all rights thereto and interests therein." [29 C. J. S., 858, sec. 69.]

The interesting case of Chaplin. v. Kansas City, 259 Mo. 479, 168 S. W. 763, was decided by Division One of this Court more than thirty years before the adoption of our new constitution in 1945.

The facts in that case differ from those in the instant case, but the reasoning is apposite as to the extent of the power of eminent domain. The plaintiff, Mrs. Chaplin, sought to enjoin the city from carrying out a plan to convert an alley running along the southerly side of plaintiff's real estate, into a parkway. Before plaintiff acquired the land the city had by condemnation taken a few feet off the east end of the tract to widen Baltimore Avenue and in the same suit described the alley and procured a decree that it be appropriated for park purposes. Plaintiff's grantor was a party to the condemnation suit. From an adverse judgment in the injunction suit, plaintiff appealed and, in substance, made the following contentions: (1) that by virtue of her ownership of the abutting land, she owned the fee in part of the alley and an easement [right of access] in the whole; (2) that having already been devoted to public use as an alley, the city had no power to appropriate it to public use as a parkway; (3) that, even if the city had such power, the record shows no attempt to condemn the particular interest [right of access] in the alley. We ruled all these contentions against the plaintiff-appellant, holding [l. c. 489, 490] that the interest in the fee and the easement of access remaining after dedication of the property as an alley constituted "private property" subject to condemnation for a different public use, and that the abutting owner could have demanded damages for the taking of such interests in the condemnation suit. This view of the law is approved in the Restatement, "Property, Servitudes," Sections 450, 508, inclusive. We quote from comment c under Section 507: "If the condemning authority has already acquired, subject to the easement, the servient tenement, the easement may be separately condemned and extinguished."

A Minnesota statute authorizes the Commissioner of Highways to acquire by purchase, gift or otherwise, all "necessary right of way" for laying out and constructing a trunk highway system, and so much as shall be necessary for the proper and safe maintenance thereof. After the right-of-way had already been acquired, the Commissioner instituted condemnation proceedings against abutting land owners to extinguish their rights of access in order to construct a "free way" with access limited to intersecting roads. The Minnesota Supreme Court in a long opinion, citing many authorities, said that the Commissioner has the obligation of maintaining the highways free from traffic hazards wherever possible and upheld his right to condemn and extinguish easements of access in the name of the State. [Petition of Burnquist, 220 Minn. 48, 19 N. W. (2d) 394.]

The foregoing shows that this court and courts of other states have held that the statutory power to condemn "land" includes the power to condemn appurtenant easements in the land. That is

certainly true of a statute which authorizes the appropriation of the fee. It may be true that the Commission has power to condemn the fee in land for some purposes, such as the erection of buildings, [See Section 8760] a point which we do not here decide. But our statutes do not authorize the condemnation of the fee for right-of-way. The fee to land taken for right-of-way remains in the abutting owners, subject to the right of the State to construct and maintain a highway for the public use. In addition to an interest in the fee, abutting owners have an easement of access from their property to the highway. This constitutes a property right, an interest in land.

Section 29 of Article IV of the Constitution grants the Commission authority to limit the easement of access. How is it to be limited? Lacking consent of the owner there is only one way to limit or extinguish this interest in land and that is by the exercise of the power of eminent domain. Section 8759 of the statutes grants the power of eminent domain to the Commission not only to procure "right of way" but for any other purpose necessary for the *proper* and economical construction of the state highway system. Section 29 of Article IV provides that limitation of access is a proper consideration in the construction of state highways where the public interest and safety may require and, therefore, announces a purpose for which condemnation may be had under the statute. The power to limit access is "subject to (such) limitations and conditions (as may be) imposed by law." Existing law, both statutory and constitutional, already limit and condition the taking of any interest in land by providing that just compensation must be ascertained and paid in the manner provided by statute. The general assembly is authorized to impose additional limitations and conditions.

Respondent says: "Even if the power to condemn the right of access has been granted to the Highway Commission . . . it is clear that it gave no right to burden the property of an abutting land owner by granting to others a right-of-way across their private land." Then respondent complains that the service roads are "not solely for the benefit of the abutting property owner whose property is taken, but for the benefit and use of others."

There is no substance in such complaint. Of course, the service roads are for the benefit of the general public. Otherwise private property could not be condemned to construct them. They will provide access not only to the "free way," but to all points on the service roads and all connecting roads.

We hold that the circuit court has jurisdiction to determine and decide all issues tendered by the condemnation petition. Accordingly, our alternative writ of mandamus is hereby made permanent. All concur.