STATE of Missouri ex rel. WEATHERBY
ADVERTISING COMPANY,
INC., Relator,

v.

The Honorable Frank CONLEY, Judge of
Division II of the Thirteenth Judicial
Circuit, Respondent.

No. 59005.

Supreme Court of Missouri,
En Banc.

July 21, 1975.

Rehearing Denied Sept. 8, 1975.

Hendren & Andrae by Alex Bartlett, Jefferson City, for relator.

Bruce A. Ring, Thomas E. Cheatham, State Highway Com'n, Jefferson City, for respondent.

John W. Ellinger, Jefferson City, for intervenor.

FINCH, Judge.

This is an original proceeding in prohibition wherein relator seeks to prohibit respondent judge from proceeding with two multi-tract condemnation actions filed by the Missouri State Highway Commission (hereinafter referred to as Commission) seeking to condemn land for federal aid highway projects.

In Boone County Case No. 56044 (hereinafter referred to as *Riddick*) relator owns two existing outdoor advertising structures located on property described as parcel No. 8 in the suit. The signs were built in 1962 pursuant to a lease with the owner. In 1973, in contemplation of selling right-of-way to the Commission, the owner of parcel No. 8 gave notice to relator terminating its lease. The Commission then purchased said right-of-way from the fee owner but no offer for the signs thereon was made to relator and Commission advised that it was not going to pay relator any compensation for the two signs. Thereafter Commission filed a petition in *Riddick* naming only relator as a defendant as to parcel 8.

In Callaway County Case No. 31903 (hereinafter referred to as *Dodge*) relator owned two sign structures on parcel No. 15, the fee interest in which belonged to one Sutterfield, and one sign on parcel No. 24 in which the fee interest was owned by Bemac, Inc. All of these structures had been placed pursuant to leases with the owners. Prior to condemnation, the Commission made an offer to Sutterfield on parcel 15, which was refused. The Commission, after

suit was filed, made an offer on parcel 24 to Bemac, Inc., which was accepted. Bemac terminated its lease with relator prior to acceptance of the offer. No offer has been made to relator with reference to its signs on either tract.

After the condemnation petitions were filed, relator filed answers and counterclaims in each of the cases wherein it asserted, *inter alia*, the failure of the Commission to make a bona fide offer as a prerequisite to condemnation under traditional eminent domain law and the failure of the Commission to comply with the provisions of 42 U.S.C. § 4651 and 42 U.S.C. § 4652 of the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970 (hereinafter referred to as Uniform Act), seeking to stop or enjoin the Commission from disturbing its properties or proceeding with the condemnation cases. The Commission then filed motions to dismiss both counterclaims. Respondent overruled these motions and subsequently entered orders of condemnation. No ruling specifically dealing with the counterclaims was entered, but the parties appear to be in agreement that the trial court indicated that it believed the orders of condemnation had disposed of the counterclaims.

After unsuccessfully seeking prohibition in the Missouri Court of Appeals, Kansas City District, the petition herein was filed. We issued a stop order and subsequently our preliminary rule in prohibition.

Twenty-four persons, all of whom are defendant property owners in *Riddick* and *Dodge,* plus two defendant property owners in another Boone County case (No. 56853) (hereinafter referred to as *Moreau* ), have been allowed to intervene. They, too, assert non-compliance by the Commission with §§ 4651 and 4652 of the Uniform Act in the Commission's dealing with intervenors and they request that the Commission be compelled to comply with those statutory provisions.

Bemac, Inc. also was permitted to intervene. It asserts that relator's lease on its

property was terminated, that it had agreed with the Commission to convey its interest in parcel 24 in *Dodge* for the amount of a stipulated Commissioner's award but that it is being prevented from receiving the agreed upon settlement by reason of pendency of this prohibition proceeding.

It is well established in Missouri that allegation and proof that the condemnor and property owners have been unable to agree on compensation to be paid for the property being taken is jurisdictional. The rule is clearly enunciated in *State ex rel. State Highway Commission v. Pinkley*, 474 S.W.2d 46, 48–49 (Mo.App.1971), as follows:

> "The power of eminent domain is an inherent attribute of sovereignty to be exercised by such agencies, for such public purposes and in such manner as may be provided by law. *State ex rel. Lane v. Pankey*, 359 Mo. 118, 221 S.W.2d 195; *State ex rel. State Highway Commission v. James*, 356 Mo. 1161, 205 S.W.2d 534; *State ex rel. State Highway Commission v. Gordon*, 327 Mo. 160, 36 S.W.2d 105. Section 227.120, RSMo 1969, V.A.M.S., empowers the Commission to condemn land for the purposes stated therein, and paragraph (13) of the section provides that the procedure to be followed shall be in accordance with the provisions of Chapter 523 of our statutes. Section 523.010 of that chapter ' * * * authorizes the filing of condemnation proceedings only in such cases where the condemnor "and the owners cannot agree upon the proper compensation to be paid." * * * ' *State ex rel. State Highway Commission v. Jensen*, Mo., 362 S.W.2d 568, 569. Accordingly, our appellate courts have long and uniformly held that the inability of the condemnor to reach an agreement with the owner on the price to be paid for the land is a jurisdictional fact which must be both pleaded in the condemnor's petition, and proven. *State ex rel. State Highway Commission v. Jensen*, Mo., supra; *Caruthersville School Dist. No. 18 of Pemiscot County v. Latshaw*, 360 Mo. 1211, 233

S.W.2d 6; *School Dist. of Clayton v. Kelsey*, 355 Mo. 478, 196 S.W.2d 860. Thus since the case of *Lind v. Clemens*, 44 Mo. 540, decided in 1869, it has been a firmly settled principle of law that when the authority to condemn is conditioned upon the inability of the condemnor and the owner to agree upon the amount to be paid, and no effort of the condemnor to effect an agreement is shown, the condemnation proceedings cannot be maintained. *Leslie v. City of St. Louis*, 47 Mo. 474; *City of St. Louis v. Glasgow*, 254 Mo. 262, 162 S.W. 596; *State ex rel. State Highway Commission v. Cady*, Mo.App., 372 S.W.2d 639, cert. den. 385 U.S. 204, 87 S.Ct. 407, 17 L.Ed.2d 300. In Cady (l.c. 642) the court said:

> ' * * * Necessity is the underlying basis for the sovereign's exercise of the power of eminent domain. No such necessity can exist until it be shown that the parties cannot agree in private negotiation. Our landowners should not be haled into court, nor should dockets be burdened with such litigation until it is made to appear affirmatively that negotiations have been attempted and have failed.' "

The petitions in condemnation in these cases allege that "relator cannot agree with the defendants, owners of, or claimants of interest in the property, on the proper compensation, if any, to be paid for the tracts of land or rights herein set out." The sufficiency of such an allegation was sustained in the case of *State ex rel. State Highway Commission v. Cady*, 372 S.W.2d 639 (Mo. App.1963), but its adequacy is questionable. It merely asserts the conclusion that the Commission cannot agree with defendants on compensation. It does not allege that a settlement has been attempted or that offers have been made and rejected. One might believe at the outset that no agreement is possible and make no attempt to settle. The petition should allege enough to show that bona fide negotiations have occurred but that the parties were unable to

arrive at a settlement. In this case, concededly, the Commission has made no offer of any kind to relator with respect to any of the signs on any of the tracts which the Commission seeks to condemn. As a matter of fact, no negotiations have taken place. Instead, the Commission takes the position as to parcel 8 in *Riddick* and parcel 24 in *Dodge,* that relator has no rights since its lease has been terminated. It has advised relator that it will pay nothing for the signs on the tracts in question. With reference to parcel 15 in *Dodge,* where relator's lease is still outstanding, Commission says it need not make an offer to relator because Sutterfield, the fee owner, refused an offer of settlement.

Has the Commission sufficiently complied with applicable requirements for negotiations to settle as to vest jurisdiction in respondent? This question necessarily involves a consideration not only of the provisions of § 523.010,[1] discussed above in *Pinkley,* but also, since both *Riddick* and *Dodge* involve federal aid projects, § 226.150, which provides in pertinent part as follows:

"The commission is hereby directed to comply with the provisions of any act of congress providing for the distribution and expenditure of funds of the United States appropriated by congress for highway construction, and to comply with any of the rules or conditions made by the bureau of public roads of the department of agriculture, or other branch of the United States government, acting under the provisions of federal law in order to secure to the state of Missouri funds allotted to this state by the United States government for highway construction. * * * "

The foregoing statutory provision, then designated as § 8106 RSMo 1929, was construed by this court in *Logan v. Matthews,* 330 Mo. 1213, 52 S.W.2d 989 (banc 1932). In that case citizens and taxpayers sought to enjoin the Commission from constructing a

highway so as to miss the towns of Avalon and Tina. A section of a highway construction statute provided that the highway to be constructed would run through those two towns, but the federal government, which was to provide federal aid for the project, refused to contribute that aid unless a more direct route between Chillicothe and Carrollton was followed. Utilization of such route would bypass Avalon and Tina.

In holding that the Commission should build the highway according to the federal government's requirements, thereby obtaining federal aid for the project, this court said (52 S.W.2d at 992-93):

"*  *  * Section 8106, supra, directs the commission to comply with any act of congress and with any rules or conditions made by the Bureau of Public Roads of the Department of Agriculture or other branch of the United States government in order to secure to the state of Missouri funds allotted to this state by the United States government for highway construction. It appears clear from the provisions of this statute that the purpose of the Legislature was to secure all of the funds allotted to the state by the federal government for road construction, and in order to accomplish that result it directed the state highway commission to comply with any of the rules or conditions made by the federal government.

"Plaintiffs contend that this statute, when read in connection with the Federal Highway Act, directs the state highway commission to comply with the rules and conditions made by the federal government as to the manner and method of construction of the highways, but does not authorize a change of the location of the highway so as to deviate from the towns through which the statute says the road shall run.

"We do not agree with plaintiffs' interpretation of this statute. The compre-

1. All references to Missouri statutes are to RSMo 1969, V.A.M.S. unless otherwise indicated.

hensive language of the statute will not admit of the limited construction contended for. If the Secretary of Agriculture is authorized by the Federal Highway Act to require a change in the location of the road as a condition to granting federal aid, of which there is no doubt, and the state highway commission would refuse to comply with the requirements made, and thus lose federal aid on the road, then the intention of the Legislature would be defeated, because by section 8106 it specifically directs the highway commission to comply with any condition made by the federal government in order to secure federal aid. A reasonable construction of the Federal Highway Act justifies our conclusion.

\* \* \* \* \* \*

"Section 8120, R.Mo.1929, which describes the general direction of the roads and designates the towns through which they shall run, and section 8106, which directs the commission to comply with any rule or condition made by the Bureau of Public Roads of the Department of Agriculture in order to secure federal aid, when read and construed together, as they should be, direct the commission to locate and construct the roads through the towns designated in section 8120, except on federal aid roads where the Bureau of Public Roads requires a change in location as a condition to allowing federal aid, in which event the commission shall comply with such requirement in order to secure federal aid."

*Logan* was followed in *Davis Construction Co., Inc. v. State Highway Commission*, 141 S.W.2d 214 (Mo.App.1940), the court saying, at 221–22:

" 'By the terms of Section 8106, as set out above, and when applied to this particular case, it was the duty of the appellant, when federal funds were made available for use on the projects involved in this case within the limits of the City of Sedalia, to comply with all rules and conditions, that is to say, requirements made by the Bureau of Public Roads, to obtain the payment to the State of Missouri of the allotment made by the federal government. \* \* \* \* ' "

See also *Brown v. McMorran*, 23 A.D.2d 661, 257 N.Y.S.2d 74 (1965); *Eargle v. Richland County Permanent Roads Commission*, 123 S.C. 368, 116 S.E. 445 (1923).

In view of the requirement of § 226.150, as construed in *Logan* and *Davis Construction*, that the Commission comply with the provisions of any act of congress or rules and conditions by the bureau of public roads (now the Federal Highway Administration of the Department of Transportation) as a condition to securing federal funds for highway construction, we must necessarily determine what those requirements are and whether they affect what we should do herein.

42 U.S.C. § 4651 provides in part as follows:

"In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices, heads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies:

"(1) The head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation.

"(2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property.

"(3) Before the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a

prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. Where appropriate the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

"(4) No owner shall be required to surrender possession of real property before the head of the Federal agency concerned pays the agreed purchase price, or deposits with the court in accordance with section 258a of Title 40, for the benefit of the owner, an amount not less than the agency's approved appraisal of the fair market value of such property, or the amount of the award of compensation in the condemnation proceeding for such property.

"  *   *   * "

42 U.S.C. § 4652 provides:

"(a) Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

"(b)(1) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired by subsection (a) of this section, such building, structure, or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term, and the fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.

"(2) Payment under this subsection shall not result in duplication of any payments otherwise authorized by law. No such payment shall be made unless the owner of the land involved disclaims all interest in the improvements of the tenant. In consideration for any such payment, the tenant shall assign, transfer, and release to the United States all his right, title, and interest in and to such improvements. Nothing in this subsection shall be construed to deprive the tenant of any rights to reject payment under this subsection and to obtain payment for such property interests in accordance with applicable law, other than this subsection."

42 U.S.C. § 4655 provides in part as follows:

"Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, a State agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such State agency that—

"(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title  .  .  . ."

The stipulation between the parties filed herein discloses that there was an exchange of correspondence between representatives of the Federal Highway Administration and the Director of Highways for the Commission wherein the latter wrote to the Federal Highway Administration as follows:

"Section 305.  The State Highway Commission, in acquiring real property, will be guided to the greatest extent practicable under state law, by the land acquisition policies in Sections 301 and 302 as specifically set out hereinabove and as permitted by proceedings hereinabove referred to, the '35 points,' as they may exist and as they may be amended from time to time by agreement with the Federal Highway Administrator.  Property owners will be reimbursed as specified in Section 303 and to the extent hereinabove set forth under Section 304."[2]

Thereafter, the Director of Highways again wrote to the Federal Highway Administration as follows:

"The first above-mentioned letter assured you that in the acquisition of real property, the State Highway Commission will be guided to the greatest extent practicable under state law by the land acquisition policies in Sections 301 and 302 of Public Law 91–646.  There is no

inability to comply with these sections and none has been suggested.

"You are further assured, as we believe to be fully stated in the letter of January 14, 1972, that as of July 1, 1972, the State Highway Commission will comply with Section 305 of said Public Law 91–646."

In response, the Federal Highway Administration, in a letter to the Director of Highways dated May 22, 1972, wrote as follows:

"Your submission of Missouri - Uniform Assistance and Real Property Acquisition Policy Act of 1970, Section 305 Assurances, dated March 14, 1972, has been reviewed by the Office of Chief Counsel and is approved."[3]

In spite of the requirements imposed on it by § 226.150 and notwithstanding the positive assurances given by the Director of Highways to the Federal Highway Administration in order to secure federal aid on Missouri highway projects, it is conceded that the Commission has not acted in these cases in accordance with the procedures spelled out in §§ 4651, 4652 and 4655.  This has been true with reference to the respondent's structures in *Riddick* and *Dodge* and with reference to tracts belonging to the intervening property owners.  The Commission's explanation is that 42 U.S.C. § 4602,[4] another section in the Uniform Act, specifically states, *inter alia*, that nothing in this chapter shall be construed as creating any element of value or damage in condemnation proceedings.  Respondent urges that compliance with § 4651 is not a prerequisite to the right to condemn and that it merely

---

2.  Sections 301, 302 and 305 of the Uniform Act, referred to in this correspondence, are now designated as §§ 4651, 4652 and 4655 of Title 42 U.S.C.

3.  A subsequent notice to all states from the Federal Highway Administration dated June 1, 1973, noted that complaints had been received in connection with the handling of compensation for advertising signs located within highway right-of-way projects and called attention to the requirements of §§ 4652(a) and (b)(1) and discussed how they should be implemented.

4.  "(a) The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

"(b) Nothing in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to January 2, 1971."

specifies guidelines for administrative action, not judicial enforcement. The Federal Highway Administration, says respondent, could cut off federal aid for non-compliance therewith, but property owners have no enforceable rights. Various federal decisions are cited in support of this position.[5]

The federal cases cited are not decisive of the issue we must resolve. They deal with situations wherein they look only to the federal statutes (the various sections of the Uniform Act) and determine therefrom whether those statutes create rights and obligations which the federal courts may enforce. That is not the question we must resolve. Instead, we must determine whether under § 226.150 the Commission must follow procedures even if it otherwise might not have been so obligated. More specifically, we must decide whether the General Assembly by enacting § 226.150 has directed the Commission to follow and comply with the requirements as to appraisal, negotiation and settlement offers spelled out in §§ 4651 and 4652 in those instances where federal highway aid is involved.

■■■ We conclude that it has. Section 226.150 very specifically states that the Commission shall comply with acts of congress or rules or conditions of agencies such as the Federal Highway Administration which are conditions for securing funds allocated to Missouri for highway construction. This it had a right to do and *Logan*

and *Davis Construction* so recognized. This necessarily means that the bona fide effort to settle and avoid condemnation, required by virtue of § 523.010, now includes, where federal aid is involved, the obligation to do those things specified in §§ 4651, 4652 and 4655 in connection with efforts to settle and avoid litigation. These include (1) appraisal of the property before negotiation, with an opportunity for the owner to accompany the appraiser, (2) determination of the sum by which buildings, structures or other improvements which belong to tenants contribute to the fair market value of the real property to be acquired and, in the alternative, the fair market value of the structure for removal, (3) establishment of just compensation for the property to be acquired, which shall be no less than the approved appraisal, (4) furnishing the owner with a written statement of, and summary of the basis for, the amount established as just compensation, and (5) making an offer of the just compensation so established to the owner.[6] In the case of structures owned by tenants, such as those here involved, payment of the settlement is to be made to the tenant if the owner of the fee disclaims all interest in the improvements.[7]

■■■ Since the Commission has not made the appraisals or offers or done the other things hereinbefore enumerated which are conditions precedent under §§ 523.010 and 226.150 to jurisdiction in

5. For example, in *Will–Tex Plastics Mfg., Inc. v. H. U. D.*, 346 F.Supp. 654 (E.D.Pa. 1972), aff'd, 478 F.2d 1399 (3d Cir. 1973), the court, after holding plaintiff had no rights because the property was acquired prior to the effective date of the Uniform Act, also held that plaintiff had no right to relief thereunder in the federal court because of the express provisions of § 4602(a). Other cases relied on include *Barnhart v. Brinegar*, 362 F.Supp. 464 (W.D.Mo.1973), and *Paramount Farms, Inc. v. Morton*, 384 F.Supp. 1294 (W.D.Wisc.1974). But see *Bethune v. H. U. D.*, 376 F.Supp. 1074 (W.D. Mo.1972), and *Whitman v. State Highway Comm'n*, No. 1793 (W.D.Mo., filed May 6, 1975).

6. Respondent insists the Commission had no duty to appraise the structures belonging

to relator and no duty to make an offer therefor, citing particularly *Western Robidoux P. & L. Co. v. Missouri State Highway Comm'n*, 498 S.W.2d 745 (Mo.1973), and *City of St. Louis v. Wabash R. R.*, 421 S.W.2d 302 (Mo. banc 1967). Neither of these cases involved federal highway aid funds or a determination of the effect of § 226.150 and neither governs the rights of the parties in these cases.

7. Bemac has disclaimed interest in relator's structures on parcel 24 in *Dodge*. This also appears to be true in the case of parcel 8 in *Riddick*, although the record contains no express disclaimer. The record discloses nothing in this respect as to parcel 15 in *Dodge*.

respondent to proceed with the *Riddick* and *Dodge* condemnation suits, respondent lacks jurisdiction to appoint commissioners or to proceed further therein until the Commission complies therewith and amends the petitions in condemnation to so allege. In such a situation prohibition is an appropriate remedy. *State ex rel. Gove v. Tate*, 442 S.W.2d 541 (Mo. banc 1969). See also *State ex rel. Clothier v. Yeaman*, 465 S.W.2d 632, 634 (Mo. banc 1971).

In *Moreau* (in which two intervenors are involved), it is not clear from the record before us whether a federal aid highway project is involved. Intervenors allege that it is and that there was evidence in the record before respondent to so show, but they also allege that the Commission has refused to advise whether this case does or does not involve a federal aid project. It would serve no useful purpose for us to delay this proceeding until that question can be resolved. If, in fact, it is a federal aid project, what we have said herein should indicate the course to be followed.

Provisional rule in prohibition made absolute.

SEILER, C. J., and MORGAN and BARDGETT, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

HOLMAN and DONNELLY, JJ., dissent and concur in separate dissenting opinion of HENLEY, J.

HENLEY, Judge (dissenting).

I am unable to agree with the holding of the majority opinion that because the condemnor has not complied with federal statutes the state court is without jurisdiction to act in these condemnation actions.

It is one thing to say that in order to secure federal-aid funds for Missouri highways the Commission shall comply with a federal law which provides for the distribution of those funds; it is quite another, in my opinion, to say that a court of this state does not have "jurisdiction" to act in a condemnation action, such as is involved here, unless the condemnor has first complied with requirements of a federal law.

That part of § 226.150 (the first sentence) quoted in the majority opinion first appeared in the laws of this state as a part of the Centennial Road Law adopted in 1921 [1] and it was carried forward in exactly the same language in each revision of our statutes thereafter, including the most recent revision in 1969. It was a part of the great effort being made then to "get Missouri out of the mud," when a high percentage of the right-of-way acquired for highways was by way of gifts from those whose land adjoined the first hard-surfaced roads. It is difficult today to imagine that members of the 1917, 1919 or 1921 sessions of the General Assembly intended, or even dreamed, that § 226.150 would or could in a future day be used in connection with a later act of congress to effect a change in the law of eminent domain of this state. I say that with confidence partly because this legislation was enacted back in the day when men in the state legislature, and those in the congress, were apparently of the opinion it was desirable, if not in fact required, that the states give their *assent* to federal aid for road construction.[2]

If it is the intent of the General Assembly that the Commission shall have authority to institute and maintain a condemnation action only if it has first complied with these additional appraisal, negotiation and settlement offer provisions of 42 U.S.C.,

1. Section 16, Laws of Missouri, 1921, (first extra session) pp. 132 and 138, which had its beginning in the Hawes Road Law, Laws of Missouri, 1917, p. 485.

2. Section 1, Laws of Missouri, 1917 (part of the Hawes Road Law), reads: "That *assent is hereby given* to an act of the congress of the United States, entitled: 'An act to provide that the United States shall aid the states in the construction of rural post roads and for other purposes,' approved July 11, 1916." (emphasis supplied). See also: § 10889, RSMo 1919.

§§ 4651 and 4652, it should say so now. It certainly does not purport to say so in § 226.150.

If these conditions are to be a determining factor in whether a state court has jurisdiction, it would be far better that the General Assembly say so than that the court, by way of "construction" of this fifty-year-old statute, say so by changing the law of eminent domain to require that the condemnor shall have complied with these particular federal requirements as well as those of Missouri.

I respectfully dissent.