STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Appellant,

v.

Helen E. PINKLEY et al., Defendants,

N. B. Downs et al., and Oscar E. Berry,
et al., Defendants-Respondents.

No. 33985.

St. Louis Court of Appeals,
Missouri.

Sept. 28, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 29, 1971.

Robert L. Hyder, Chief Counsel, Jefferson City, George Q. Dawes, Asst. Counsel, Sikeston, for plaintiff-appellant.

Schnapp, Graham & Reid, J. B. Schnapp, Fredericktown, for defendants-respondents.

DOERNER, Commissioner.

Appeal by the State Highway Commission in an eminent domain proceedings. The first issue presented is whether the trial court erred in denying condemnation for the reason that the evidence was insufficient to show that the Commission and the owners of the lands sought to be condemned could not " * * * agree upon the proper compensation to be paid, * * *," as required by § 523.010, RSMo 1969, V.A.M.S.

The Commission's petition, filed on June 11, 1970, in general is in the conventional form. It was alleged therein that the Commission, referred to as the relator, sought to condemn the properties described for the purpose of locating (actually relocating) part of State Route 72 in Madison County, from Supplementary Route D easterly to U. S. Route 67 west of Fredericktown, the total length of the improvement being 4.455 miles. The Commission further alleged that: "7. The Relator and the owners of the respective lands, properties, and rights cannot agree on the compensation to be paid." The lands and rights owned by defendants N. B. Downs, Minnie Downs, Maurice K. Downs, L. O. Whitworth, Trustee, New Era Bank, and Robert Green, Trustee, hereafter referred to collectively as defendants Downs, were described in paragraph 11 of the petition and subparagraphs thereof. Those owned by defendants Oscar E. Berry and Bertha E. Berry, hereafter called defendants Berry, were described in paragraph 12 of the petition and subparagraphs thereof.

On August 5, 1970, both of the defendants filed their respective answers in which they specifically denied each and every allegation contained in the foregoing paragraph 7 of the Commission's petition, and affirmatively alleged "* * * that a valid and unconditional offer for the acquisition of their property has not been made to them."

Pursuant to an order of the court a hearing was held on August 6, 1970, on the Commission's petition for condemnation. On behalf of the Commission it called to the stand John Cockman, who testified on direct examination that he was employed by the Commission in the capacity of a negotiator for right-of-way on the Route 72 project in Madison County; that in his initial respective calls upon the defendants Berry and Downs he had explained the plans to them and obtained verification from them regarding ownership and the property lines as shown on the plans. Counsel for the Commission inquired of the witness whether he had made an offer to either of the defendants when he made his initial call upon them, and Cockman replied that he had not. The witness further testified that in his separate second calls upon the defendants Berry and Downs he made a written offer to each, which each defendant refused.

On cross-examination Cockman was asked whether the exhibits shown to him were the documents he contended were the written offers made to the defendants, and he answered that they were. He further acknowledged that no other offers had been made to the defendants, that after he had delivered the documents to the defendants he never went back to them and made any subsequent offers, and that he never advised them that the offer allegedly made in the exhibits had ever been approved by the State Highway Commission.

On cross-examination Cockman also stated that with the written offers he had submitted a deed to each of the defendants for their respective signatures, with the amount written in. A colloquy then occurred between the court and counsel for the parties in which the court pointed out what it considered to be the deficiency in both of the alleged written offers. Those exhibits, introduced by the defendants, are precisely the same except for the difference in the figures which were inked in on the typewritten form. The exhibit as to defendants Downs reads:

"We are now in a position to make an offer for your property needed for highway construction. The Brochure entitled 'When a Highway Comes Your Way' explains the procedures followed in arriving at this offer. Subject to the approval of the State Highway Commission, our offer is $8,575.00.

"The above offer represents payment for and includes any interest in the needed right-of-way which you and other parties may have in the property. The Right of Way Negotiator handing you this letter will answer any questions you may have in regard to our procedures in the acquisition of right-of-way.

"Yours very truly,

"/s/ W. H. Shaw
"W. H. SHAW
"District Engineer"

The court stated that it would have to deny condemnation because the law contemplates a bona fide honest offer, and entered the following judgment:

" 'Defendants' Motion sustained as to Paragraphs 11:40 and 11:11. Cause submitted and at the close of all the evidence the Court denies condemnation because of Plaintiff's failure to comply with statutory requirements.' "

The Commission's appeal followed.

█ The power of eminent domain is an inherent attribute of sovereignty to be exercised by such agencies, for such public purposes and in such manner as may be provided by law. State ex rel. Lane v. Pankey, 359 Mo. 118, 221 S.W.2d 195; State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534; State ex rel. State Highway Commission v. Gordon, 327 Mo. 160, 36 S.W.2d 105. Section 227.120, RSMo 1969, V.A.M.S., empowers the Commission to condemn land for the purposes stated therein, and paragraph (13) of that section provides that the procedure to be followed shall be in accordance with the provisions of Chapter 523 of our statutes. Section 523.010 of that chapter " * * * authorizes the filing of condemnation proceedings only in

such cases where the condemnor 'and the owners cannot agree upon the proper compensation to be paid.' * * *" State ex rel. State Highway Commission v. Jensen, Mo., 362 S.W.2d 568, 569. Accordingly, our appellate courts have long and uniformly held that the inability of the condemnor to reach an agreement with the owner on the price to be paid for the land is a jurisdictional fact which must be both pleaded in the condemnor's petition, and proven. State ex rel. State Highway Commission v. Jensen, Mo., supra; Caruthersville School Dist. No. 18 of Pemiscot County v. Latshaw, 360 Mo. 1211, 233 S.W.2d 6; School Dist. of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860. Thus since the case of Lind v. Clemens, 44 Mo. 540, decided in 1869, it has been a firmly settled principle of law that when the authority to condemn is conditioned upon the inability of the condemnor and the owner to agree upon the amount to be paid, and no effort of the condemnor to effect an agreement is shown, the condemnation proceedings cannot be maintained. Leslie v. City of St. Louis, 47 Mo. 474; City of St. Louis v. Glasgow, 254 Mo. 262, 162 S.W. 596; State ex rel. State Highway Commission v. Cady, Mo.App., 372 S.W.2d 639, cert. den. 385 U.S. 204, 87 S.Ct. 407, 17 L.Ed.2d 300. In Cady (1.c. 642) the court said:

"* * * Necessity is the underlying basis for the sovereign's exercise of the power of eminent domain. No such necessity can exist until it be shown that the parties cannot agree in private negotiation. Our landowners should not be haled into court, nor should dockets be burdened with such litigation until it is made to appear affirmatively that negotiations have been attempted and have failed."

■ It is hornbook law that in order to make a contract there must be a meeting of the minds of the parties. Such a meeting is frequently, if not invariably, arrived at after a period of bargaining and dickering. But however brief or protracted may be the negotiations, a meeting of the minds can ultimately be reached only by a valid offer by one party and the unqualified acceptance of it by the other. Accordingly, in order to satisfy the requirement of Section 523.010 that the condemnor and the owner were unable to agree upon the proper compensation to be paid, it logically follows that the condemnor's evidence must show that a valid offer was made by one party and rejected by the other. And since the burden of proving the inability of the parties to agree is on the condemnor, the cases indicate that it is customary, if not mandatory, for the condemnor to initiate the negotiations and to make the first offer or proposal. Thus in 29A C.J.S. Eminent Domain § 224(2) it is said: "In order to satisfy the statutory requirement, there must be a bona fide attempt to agree. There must be an offer made honestly and in good faith, and a reasonable effort to induce the owner to accept it. * * *" For examples of bona fide but unavailing attempts made by condemnors to reach an agreement with the owners see Shelby County R–IV School Dist. v. Herman, Mo., 392 S.W.2d 609 and School Dist. of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860.

■ It is readily apparent from the evidence that there were no valid offers made by the *State Highway Commission* in the instant case. The purported written offers presented by Cockman to the defendants begin with the phrase "We are now in a position to make an offer," and refers to "our offer," but nowhere therein are the "we" or "our" identified, nor is it recited therein that the purported offers were made by or on behalf of the Commission. They were signed only by the District Engineer, but nothing in the exhibits indicates that he had been authorized by the Commission to make any offers on behalf of the Commission, and there was no other evidence produced to that effect. In fact, Cockman admitted that the purported offers had never been approved by the Commission. Furthermore, the phrase " * * * Subject to the approval of the State High-

way Commission, our offer is _____" effectively refutes any contention that the exhibits may be considered as valid offers made by the Commission. Whoever heard of one party proposing to the other: "I offer you X dollars for your land, subject to my approval of my own offer?"

In its brief the Commission appears to tacitly concede that the exhibits did not constitute valid offers made by the Commission to the defendants. Rather, the Commission asserts that it could not be expected to give its numerous right-of-way agents blanket authority to negotiate for right of way without retaining some control over them. Of course not, and no one, least of all this court, expects it to. But there is no apparent reason why the Commission cannot determine the amount which it considers would be proper compensation, and authorize its agent to offer no more than that amount to an owner. What the Commission appears to have difficulty in understanding is that in order to show the inability of the parties to agree, the offer or proposal, if it is to be made by the Commission, must first be authorized by the Commission and then be presented to the owner by one of the Commission's agents, as directed. Evidence of the owner's unequivocal refusal of such a valid offer would then be sufficient to show the inability of the parties to agree.

Since there was no valid offer or proposal by the Commission in the instant case there was no refusal to accept that which legally did not exist. There was no evidence that the defendant owners were verbally requested to make offers or proposals to the Commission, and in our opinion the language employed in the exhibits, couched in the form of purported offers, cannot be tortured into requests to the defendants to submit proposals to the Commission. Considered in its entirety the evidence fell far short of showing that the negotiations had reached the stage where it could reasonably be said that the Commis-

sion and the defendant owners were unable to agree upon the proper compensation to be paid, and the court's ruling that the evidence was insufficient to show compliance with the requirement of Section 523.010 was eminently correct and proper.

It will be recalled that the first part of the judgment entered by the trial court reads: " 'Defendants' Motion sustained as to Paragraphs 11:40 and 11:11. * * *' " Both defendants Downs and defendants Berry filed motions, but the court's reference to paragraph 11 and the subparagraphs thereof, in which only the parcels owned by defendants Downs were sought to be condemned, makes it evident that the court sustained one of the motions filed by those defendants. Both parties agree that of the three motions which the defendants Downs filed, the court, in using the singular, "motion," referred to the motion to dismiss of those defendants. Having sustained the action of the trial court in denying the Commission the right to condemn any property of the defendants it may seem at first blush to be unnecessary to consider whether the court erred in sustaining the motion. However, inasmuch as the issues presented by defendants Downs' motion may again arise should the Commission renew its efforts to acquire the property and again be forced to condemn the same, we will consider such issues.

In its petition the Commission pleaded:

"11:40. Also, right-of-way for a Roadside Park containing 1.96 acres, acreage included above, described as follows: * * *."

In the pertinent part of their motion defendants Downs alleged that the petition showed on its face that the property described in subparagraph 11:40 " * * * is not being acquired for state highway purposes and the State Highway Commission of Missouri has no statutory authorization whatsoever to acquire said land by condemnation."

Preliminarily we must decide what was meant by the term "Roadside Park" as used in the petition. So far as the transcript before us shows, no evidence was adduced at the hearing as to the nature of the facility which the Commission intended to provide on the parcel in question. Seizing upon the word "park," defendants maintain that only the Missouri State Park Board, by § 253.040, is given the statutory power to acquire land for a state park or parkway purposes, and that the State Highway Commission is not so empowered. They obviously construe the word "park" to be " 'a pleasure ground in or near a city, set apart for the recreation of the public' * * *." State ex rel. Wood, Attorney General v. Schweickardt, 109 Mo. 496, 19 S.W. 47, 51. It is true that in the decisions defining the word the element of public recreation appears to be dominant. Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332, 335; Goode v. City of St. Louis, 113 Mo. 257, 20 S.W. 1048, 1051; Thayer v. City of St. Joseph, 227 Mo.App. 623, 54 S.W.2d 442, 445; Kennedy v. City of Nevada, 222 Mo. App. 459, 281 S.W. 56, 58. And we note that in § 253.010 "park" is defined as " * * * any land, site or object primarily of recreational value or of cultural value * * *."

In its brief the Commission disclaims any intention to acquire the land in question for recreational purposes and asserts that what it seeks to provide " * * * is merely a rest area for the accommodation of motorists seeking relief from fatigue of traveling the highway system." The term "rest area" is one which is thoroughly familiar to the Commission, as will presently appear, and it would certainly have been advisable for the Commission to have used that term rather than that of the word "park." However, having in mind the fact that "park" is preceded by the word "roadside," that the area sought to be acquired is less than two acres, and that the primary purpose of the action is to acquire land for

the relocation of a state highway, we will accept the Commission's explanation of the term used.

Having disposed of that preliminary question we thus reach the fundamental issue of whether in the instant case the Commission was empowered to condemn the parcel for the purpose of providing a rest area abutting State Route 72. In our consideration of that issue we should bear in mind certain applicable general rules. In State ex rel. State Highway Commission v. Gordon, 327 Mo. 160, 36 S.W.2d 105, 106, the Supreme Court en Banc said of the condemnation that " * * * When an agency of the state asserts that the right to exercise the power has been delegated to it, it must be able to point out a statute which in express terms or by clear implication authorizes such exercise and to the extent claimed. * * * " And, regarding the construction of a statute which it is claimed authorizes the exercise of the power of eminent domain the Supreme Court, likewise sitting en Banc, stated that " * * * eminent domain statutes are to be strictly construed so far as the power to condemn is concerned, yet they are not to be construed so as to defeat the evident purpose of the Legislature. Nor can we read into the statute what the lawmakers in their wisdom have seen fit to leave out. * * * " State ex rel. Siegel v. Grimm, 314 Mo. 242, 284 S.W. 490, 493. Of course, the rule of strict construction has only relative application, and the primary purpose of all statutory construction is to determine the intent of the legislature. State ex rel. Schwab v. Riley, Mo., 417 S. W.2d 1.

■ The Commission first seeks to justify its action on the grounds that by Article IV, § 30(b), subsection (3) (b), Const. 1945, it may expend state road funds for the purpose of constructing "state highways and bridges in, to and through state parks * * *." That provision may empower the Commission to build a state

highway in, to and through a park established by the Missouri State Park Board but it obviously does not authorize the State Highway Commission to provide a new park, or even a rest area.

■ The Commission also claims that the power to provide a rest area abutting a state route is given to it by subsection (5) of the same article of the constitution which authorizes the expenditure of such funds "(5) For such other purposes and contingencies relating and appertaining to the construction and maintenance of such highways and bridges as the commission may deem necessary and proper." But as the Supreme Court en Banc stated in the recent case of Joseph L. Pohl, Contractor, a Corp. v. State Highway Commission, Mo., 431 S.W.2d 99, 105, that " * * * subsection must be considered along with what immediately precedes it in subsections (1) through (4) of § 30(b). When so read and considered, it is plain that any authority or power conferred by subsection (5) is clearly limited to the accomplishing of additional discretionary matters in connection with the highways and bridges specified in subsections (1) through (4), * * *." In short, subsection (5) of the constitution may implement those powers specifically granted in subsections (1) through (4) but it is not a grant of any new or unspecified power such as the creation of a roadside park or rest area. Similarly, paragraph (13) of § 227.120 is likewise merely an implementation of the specific powers thereby granted to the Commission to acquire land for the purposes therein enumerated, and not a carte blanche grant of power for the acquisition of land for any and all purposes which the Commission may desire to obtain, however well-intentioned its motive may be.

■ Lastly, in its brief the Commission states: "Section 226.750, RSMo 1969, specifically provides that the State Highway Commission is authorized to acquire, main-tain and improve areas abutting interstate highways and other highways in the primary system for 'rest and recreational areas for the accommodation of the traveling public'. * * * " What "other highways?" The section cited reads " * * * interstate highways and *other highways in the primary system bearing federal designations * * *.*" (Emphasis ours.) That section, in our opinion, weakens rather than supports the Commission's position and effectively refutes its contention that the Commission has been given the statutory authority to acquire land for the purpose of providing a rest area abutting, as here, a state route which is neither an interstate highway nor a federally designated highway. For it is apparent that the General Assembly believed it was necessary, in order to clothe the State Highway Commission with the authority to acquire land for rest areas, to enact § 226.750 giving the Commission that specific power. And it is likewise apparent that in granting such authority to the Commission it did not extend the power to all parts of the state highway system but instead restricted it to interstate highways and only such other highways as bear federal designations. It is a familiar principle of statutory construction that " * * * the express mention of one thing implies the exclusion of another * * *." Brown v. Morris, 365 Mo. 946, 290 S.W.2d 160, 166.

Furthermore, Section 226.750 was enacted by the legislature as Section 1 of an Act containing five sections. Laws 1965, 2nd Ex.Sess., p. 907. Section 7 of that Act, now § 226.780, expressly provides that in the acquisition of land for rest areas " * * * no state funds shall be expended and all expenditures under this act shall be limited to funds granted to the state by the federal government for such purposes." If the General Assembly, while granting the Commission the authority to acquire land for rest areas abutting interstate and federal highways, expressly forbids the Commission to use state funds for such purpose, then what possible right does the

Commission have to use state funds for a rest area in the instant case where a state route is involved?

As one who has extensively traveled the highways and byways of our state highway system the writer, as well as all of the other members of this court, are sympathetic to the evident efforts of the Commission to provide such rest areas on all of the highways in the system. But we are confronted not only with the fact that the Commission has failed to point to any statute which " * * * in express terms or by clear implication * * *" has delegated to it the exercise of the power it seeks to employ, State ex rel. State Highway Commission v. Gordon, supra, but it cites in support of its claimed right a statute which, at least by implication, denies to it the very exercise of that power. As the Supreme Court said in State ex rel. Siegel v. Grimm, 314 Mo. 242, 284 S.W. 490, 493, we cannot " * * * read into the statute what the lawmakers in their wisdom have seen fit to leave out." The power which the Commission seeks to exercise must come from the General Assembly, not the courts. Accordingly, we rule that the trial court did not err in sustaining defendants Downs' motion to strike subparagraph 11:40 from the Commission's opinion.

█ It did, however, err in striking subparagraph 11:11. In its petition the Commission had alleged that all of the parcels of land, except that described in subparagraph 11:40 were being taken as a part of its adopted plan for the construction of the highway involved. In their motion to dismiss as to subparagraph 11:11, the defendants Downs asserted that the parcel therein described was not being taken for an authorized purpose, " * * * but merely for the purpose of eliminating all of the landowners land in this general area and particularly the area around the property described in Paragraph 11:40." We interpret that allegation, particularly in view of the defendants' argument in their brief, as an objection that the Commission was attempting to take a parcel which cannot, and will not, under any contingency, be used or useful in the construction and maintenance of State Route 72. Regarding such a plea the Supreme Court said in State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64, 69, a rehearing:

> "In this case *all* the land sought to be taken is presumptively necessary for the public uses mentioned in relator's petition and bill of particulars. If the Commission is arbitrarily abusing its discretion by attempting to take land which can never, under any contingency, be used for any of such public purposes, the burden is upon the objecting landowners to allege and prove such abuse. * * *"

Thus the burden was upon the defendants to prove their claim of abuse of discretion. Again, so far as the transcript before us shows, the defendants did not introduce any evidence in support of their motion and in their brief they do not assert that any was adduced. Instead, they rely entirely upon a stipulation attached to the transcript which reads that counsel for the Commission stated in open court " * * * that he did not believe a part of Defendants' land described in Paragraph 11:11, consisting of approximately .05 of an acre, was necessary for the construction and maintenance of relocated Route 72, but would probably become a portion of the roadside parks." Defendants regard that remark as a formal admission on the part of the Commission that all of the land described in subparagraph 11:11 would not be used for the construction and maintenance of the highway, and that the Commission's attempted acquisition of it was arbitrary and a gross abuse of discretion. No cases are cited to support its position. We view the remark at best as no more than counsel's expression of his own personal belief, and are of the opinion that it did not rise to the dignity of a formal admission on behalf of the Commission that

the parcel which the Commission was attempting to acquire was not necessary for the construction and maintenance of the highway. Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731, 740; Sudekum v. Fasnacht's Estate, 236 Mo.App. 455, 157 S.W.2d 264, 266; Kansas City v. Martin, Mo.App., 391 S.W.2d 608, 615.

The judgment denying the Commission the right to condemn because of its failure to comply with the requirement of Section 523.010 is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.