**CITY OF COLUMBIA, Missouri,
Plaintiff-Intervenor-Appellant,**

v.

**Loren D. BAURICHTER, et al.,
Defendants-Appellants,**

and

**Fred Coats, et al., Defendants-Appellees,**

and

**the Heirs of Ben M. Anderson and
William T. Anderson, et al.,
Defendants-Appellants.**

**No. 67867.**

Supreme Court of Missouri,
En Banc.

July 15, 1986.

Thomas M. Schneider, Columbia, for plaintiff-intervenor-appellant.

George A. Spencer, Columbia, for Baurichter.

David V. Bear, Columbia, for Coats.

Jeffrey O. Parshall, Columbia, for the Anderson heirs.

Bruce Ring, Dennis J. Redel, Thomas B. Gilliam, Jr., Jefferson City, amicus curiae (Mo. Highway & Transp. Com'n).

WELLIVER, Judge.

Appellants, the City of Columbia, Missouri, the Anderson heirs and the Baurichters, appeal from the Boone County Circuit Court's February 14, 1985 Amended Memorandum Decision apportioning condemnation damages to appellants Baurichter and respondents Coats. The Court of Appeals, Western District, dismissed the City's appeal for lack of standing and held that the City's failure to negotiate deprived the circuit court of jurisdiction to hear the condemnation action. We transferred the case to examine the jurisdiction question. We find that the City had standing and that the circuit court had jurisdiction.

## I

In 1977, the Missouri-Kansas-Texas Railroad, successor in interest to the Missouri Midlands Railroad, abandoned its right-of-way in and near the City of Columbia, Missouri. The City of Columbia resolved to establish a park in the abandoned right-of-way, through the use, in part, of federal funds. After purchasing other segments of the 100' wide right-of-way, the City petitioned for condemnation of the 3300' long strip in question since it could not determine ownership of the property and, therefore, did not know with whom to negotiate for its purchase.

The confusion over the ownership of the 3300' strip of right-of-way stems from the simultaneous recordation of three deeds at 9:10 a.m. on March 30, 1899. One deed, dated July 26, 1895, was from the then owners of the strip to Ben & William Anderson. Another deed, dated November 7, 1898, was from James Turner, then owner of the strip, to Ben Anderson. Still another deed, dated December 2, 1898, is from James Turner to the Missouri Midlands Railroad. The problem is further complicated since the deeds were entered in reverse chronological order.

The Anderson heirs claim ownership through the deeds to both Ben and Ben & William Anderson. The Baurichters claim ownership to the entire tract through a January 5, 1904 deed from James Turner to Charles Proctor. The Coats claim ownership to the north half of the right-of-way as successors in interest to Jesse Turner who acquired an interest in the property in a 1908 partition suit.

In its Fourth Amended Petition, the City of Columbia set forth the various conflicting ownership claims and stated that it "ha[d] not made an offer to purchase the tracts of land sought to be condemned herein for the reason that the true owner or owners of said land are unknown to plaintiff." Upon the City's Fourth Amended Petition, the circuit court issued a con-demnation order on July 28, 1982. Commissioners were appointed to determine damages. On February 14, 1985, the circuit court entered its Amended Memorandum Decision apportioning the damages between appellants Baurichter and respondents Coats.[1] The Anderson Heirs, the Baurichters and the Intervening City of Columbia appealed the apportionment decision to the Court of Appeals, Western District.

The court of appeals, finding that the City had no standing to intervene in the apportionment action, dismissed the City's appeal *sua sponte*. Then the court of appeals raised, *sua sponte*, what it considered to be a jurisdictional deficiency in the circuit court condemnation action since the City had not made an offer to purchase the strip of right-of-way, in violation of § 523.-010, RSMo Cum.Supp.1986. The court of appeals found that a confused state of title among known parties did not qualify as "unknown" ownership as required by the statute.

## II

Constitutional charter cities, such as the City of Columbia, are granted the power of eminent domain to acquire land for the provision of parks. § 82.240, RSMo 1978. However, unless the city charter explicitly provides to the contrary, the city is required to follow the general condemnation requirements set forth in § 523.010, RSMo Cum.Supp.1986 and Rule 86. *Bueche v. Kansas City*, 492 S.W.2d 835 (Mo. banc 1973). The City of Columbia has no explicit provision denying applicability of general condemnation principles and, therefore, § 523.010, RSMo Cum.Supp.1986 applies.

When federal funds are involved, the condemner must satisfy the requirements of both state law and the Uniform Relocation Assistance and Real Property Acquisition Policies Acts (U.R.A.), 42

---

1. On a prior appeal, the circuit court's original decision was reversed and remanded by the court of appeals as incomplete for failure to apportion the damages. *City of Columbia v. Baurichter,* 684 S.W.2d 903 (Mo.App.1985)

U.S.C. §§ 4601–4655 (1982), except to the extent state law expressly prohibits compliance with the U.R.A. *Bethune v. United States Department of Housing & Urban Development,* 376 F.Supp. 1074 (W.D.Mo. 1972); *Whitman v. State Highway Commission of Missouri,* 400 F.Supp. 1050 (W.D.Mo.1975). Since Missouri has no such express prohibition, both state law and the U.R.A. apply.

### A

■ Section 523.010, RSMo Cum.Supp. 1986 and Rule 86 authorize condemnation proceedings when the condemners and the owners "cannot agree upon the proper compensation to be paid, or in the case the owner is incapable of contracting, be unknown, or be a nonresident of this state." § 523.010, RSMo Cum.Supp.1986.[2] Rule 86 also waives the negotiation requirement when the owner "cannot be found." Unless the condemner complies with the negotiation requirement of the authorizing statute, the trial court has no jurisdiction to hear a condemnation petition. *State ex rel. Weatherby Advertising Co., Inc. v. Conley,* 527 S.W.2d 334 (Mo. banc 1975); *State ex rel. State Highway Commission v. Pinkley,* 474 S.W.2d 46 (Mo.App.1971); *State ex rel. State Highway Commission v. Cady,* 372 S.W.2d 639 (Mo.App.1963), *cert. denied,* 385 U.S. 204, 87 S.Ct. 407, 17 L.Ed.2d 300 (1966).

While the court of appeals recognized the unknown owners exception to the negotiation requirement, it found that "this is not a case of unknown owners to which the statute refers but an unknown state of the title in the named and known defendants." This would render the unknown owners exception a virtual nullity, since, in both of these situations, the ultimate question to be determined is the state of the title. This is true whether title exists in a named and known group, or whether it exists in a not yet ascertained group.

■ The City of Columbia clearly demonstrated that it was impossible for it to evaluate the numerous ownership claims to the property without judicial illumination. The City recognized that there could be no viable negotiation for an interest, the nature, extent, and existence of which, could not be known until judicially determined. Forthrightly and straightforwardly, the City states in its petition that no offers had been made because of the existence of this situation. The court of appeals at least tacitly suggested the possibility of a precedent quiet title action. The negotiation requirement of the Missouri condemnation statute was enacted to prevent needless litigation when fruitful negotiations between the owner and the condemner could occur. *Cady, supra.* "The very purpose of condemnation proceedings is *to ascertain* and acquire title to the land sought for [public] purposes and *to foreclose all outstanding claims and interests* that are, or may be, asserted thereto by others." *City of St. Louis v. Barthel,* 256 Mo. 255, 166 S.W. 267, 272 (1914) (emphasis added). A precedent quiet title action would bring before the court the very same parties and issues to be involved in the subsequent condemnation action. We do not believe that the legislature intended an interpretation resulting in such needless multiplicity of litigation since that is the very harm which it had sought to remedy.

■ The court of appeals suggested that the City be forced to negotiate with the claimants at its own risk. Such a requirement could result in both futile negotiations and possible payment of taxpayers' money to persons not entitled to payment. We will not presume that the legislature intended condemners to undertake futile acts or improper payments of taxpayers' money. Such a requirement would be inconsistent with prior case law, for a condemner need not "determine the respective rights of the defendants between themselves." *State ex rel. State Highway Commission v. Brown,* 231 Mo.App. 56, 95 S.W.2d 661, 666 (1936) (citations omitted).

**2.** The negotiation requirement of the current statute is substantially unchanged since its original enactment in 1853 Mo. Laws p. 128, §§ 13–14.

It is sufficient for the condemner to allege that it is "unable to ascertain and set forth the several and different interests claimed by [the defendants]." *Union Electric Light & Power Co. v. Dawson*, 228 Mo. App. 1224, 78 S.W.2d 867, 868 (1934).

■ Our perception of the legislative intent behind the statute leads us to the conclusion that the City, in this instance, by the facts alleged in its petition, satisfied the requirements of the statute and brought itself within the unknown owners exception to the negotiation requirement of § 523.010. The circuit court was not deprived of jurisdiction by reason of § 523.010.

**B**

We next examine whether the City of Columbia complied with the U.R.A., 42 U.S.C. § 4655 (1982), which imposes the requirements of 42 U.S.C. § 4651 (1982) on the City. Section 4651 states "In order: to encourage and expedite the acquisition of real property ... to avoid litigation and relieve congestion in the courts ... (1) the head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation."

While there are numerous cases under § 4651, there are none on point to our inquiry as to whether, under these circumstances, the City of Columbia made "every reasonable effort" to negotiate.

■ As set forth, *supra*, the City had only three possible alternatives, to attempt quieting title before starting condemnation, negotiating at its own risk, or not negotiating. The first of these alternatives would cause multiplicity of litigation, the exact evil that Congress intended to eradicate. As to the second alternative, forcing the City to deal at its own risk would discourage the development of the projects which Congress intended to promote. Satisfaction of our statute in our opinion satisfied the federal requirements.

**III**

■ In dismissing, *sua sponte*, the appeal by the City of Columbia for lack of standing, the court of appeals overlooked the impact of § 523.053.1, RSMo Cum. Supp.1986 which grants the condemner standing to intervene as an interested party to the apportionment proceedings.[3]

The City of Columbia complied with both § 523.010, RSMo Cum.Supp.1986 and 42 U.S.C. § 4651 (1982). The circuit court was not without jurisdiction to hear the condemnation action.

We affirm the jurisdiction of the circuit court and we retransfer the case to the Court of Appeals, Western District, for consideration of the merits of each of the appeals from the circuit court's apportionment decision.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY and ROBERTSON, JJ., concur.

RENDLEN, J., dissents.

3. Since the circuit court allowed the City to intervene, we need not determine whether § 523.053.1, RSMo Cum.Supp.1986, provides intervention as of right or through trial court discretion.