STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

v.

Joseph Harry KEEVEN, et al., Respondents.

No. 77116.

Supreme Court of Missouri, En Banc.

March 21, 1995.

John H. Gladden, Laura A. Schildz, Chesterfield, Rich Tiemeyer, Gregory W. Schroeder, Jefferson City, for appellant.

Kevin A. Suffern, Dale L. Rollins, St. Charles, for respondents.

ROBERTSON, Judge.

This case presents two issues: First, whether Article IV, Section 30(b) and Section 227.120(13) permit the Missouri Highway and Transportation Commission ("the Commission") to condemn private property to replace federally protected wetlands disturbed in construction of a highway; second, whether the Commission may condemn the land it seeks to condemn in this case. The trial court held that the Commission lacked authority to condemn any land to replace wetlands. It did not reach the second issue. The Court of Appeals, Eastern District, affirmed. We granted transfer because of the general interest and importance of the issues presented. We have jurisdiction. Mo. Const. art. V, § 10. The judgment of the trial court is reversed and the cause remanded for further, consistent proceedings.

## I.

The facts are stipulated.

The Commission planned Route 115, connecting the Missouri Bottoms area of St. Louis County to northeastern St. Charles County, in the late 1980s. It ultimately determined that in order to build the highway it was necessary to disturb approximately 8.7 acres of federally protected wetlands. The parties do not challenge the placement of Route 115, nor do they contest the need for disturbing the protected wetlands in the construction of the highway.

The Rivers and Harbors Act (33 U.S.C. § 403) and the Clean Water Act (33 U.S.C. § 1344) permit the Secretary of the Army, acting through the Army Corps of Engineers ("the Corps"), to issue permits for the otherwise prohibited discharge of dredged or fill material onto protected wetlands. If issued, the permits must assure that the permitted activity does not violate the water quality standards of the Clean Water Act. In determining the appropriate permit conditions, the Corps must comply with the National Environmental Policy Act ("NEPA"), the public notice and hearing requirements of the Clean Water Act, and the general provisions of the federal Administrative Procedure Act.

The Commission applied for such a permit for its construction of Route 115. The Corps granted the permit with the condition, among others, that the Commission acquire 17.3 acres of replacement wetlands some three

and a half miles from Route 115. The permit provided that St. Stanislaus Park would annex the wetlands so that the St. Louis County Department of Parks and Recreation could manage the property as a wetland site. The Corps generally requires that a permittee create new wetlands in an acreage equal to that disturbed. In this case, the Corps approved setting aside an amount of already existing wetlands roughly twice the affected acreage. The Commission and the Corps chose the tract adjacent to St. Stanislaus Park because they could find no other tracts of sufficient size, and because of the economic advantage of having the park take over management of the neighboring property. The 17.3 acre tract included 14.7 acres of respondent Joseph Keeven's property; the remaining land belonged to respondents Glen and Kathleen Maschmidt.

On September 1, 1989, prior to initiating this condemnation, the Commission convened in Jefferson City and unanimously voted "that it is necessary for the proper and economical construction and maintenance of state highways" that it exercise eminent domain over respondents' property. This action arises from respondents' resistance to that condemnation.

## II.

▮ Respondents initially claim that the Commission lacks authority to expend public funds for the condemnation of any lands to replace wetlands in compliance with a federal permit. They argue that the Commission's condemnation power is limited to land necessary for the actual construction of a highway.

## A.

▮ The power of government to condemn private property is a frightening power. It allows government to deprive landowners of the enjoyment and use of their property against their wishes. The power to condemn proceeds from utilitarian principles that place the public good over any individual's private desires and assumes that monetary compensation can sufficiently replace what the government takes without regard to ancestral acquisition or plans for progeny. For this reason, courts properly read condemnation authority narrowly, limiting the government to taking only property that the law clearly and expressly permits the government to take for the narrow purposes the law clearly and expressly or by necessary implication permits.

*State ex rel. Missouri Cities Water Company v. Hodge*, 878 S.W.2d 819 (Mo. banc 1994), exemplifies this Court's chary reading of condemnation authority. There, the Court addressed a claim by the City of Mexico that Section 91.450, RSMo 1986, authorized it to condemn private property for a public purpose. Noting that eminent domain encroaches on the rights of the citizen, the Court warned that entities claiming such authority must point to a provision which expressly or by necessary implication confers it. *Id.* at 821.

Article IV, Section 30(b) of the Missouri Constitution establishes the Missouri State Road Fund and the purposes for which it may be used. Section 30(b).1(5) authorizes expenditures

> for such other purposes and contingencies relating and appertaining to the construction and maintenance of such highways and bridges as the highways and transportation commission may deem necessary and proper.

As such it imposes two limitations on the Commission's authority. First, the Commission's expenditures must relate and appertain to construction of state highways. Second, the Commission must deem the expenditure "necessary and proper."

Section 227.120 authorizes the Commission to condemn land for thirteen purposes. Among these purposes, the Commission may condemn real property "for any other purpose necessary for the proper and economical construction of the state highway system for which the commission may have authority granted by law." Section 227.120(13). Section 227.120 therefore imposes impediments similar to those expressed in the Constitution. First, the Commission's design to condemn land must proceed from a "purpose necessary for the proper and economical construction of the state highway system." Sec-

ond, the Commission must have "authority granted by law."

Section 226.020, RSMo 1994, is authority granted by law. It creates the Commission and vests it with "all powers necessary or proper to enable the commission ... to carry out fully and effectively, all of the purposes of chapters 226 and 227, RSMo." The overriding purpose of Chapters 226 and 227 is to create the administrative apparatus and legal authority for the construction and maintenance of a "statewide connected system of hard surface roads [to be known as] the 'state highway system.'" § 227.020, RSMo 1994. Section 227.030, RSMo 1994, places the construction of the state highway system "under the general supervision and control of the state highway and transportation commission" and authorizes the Commission to "take whatever steps may be necessary to cause said state highway system to be constructed." Further, the Commission is given the authority "to make all final decisions affecting the work provided for herein." § 227.030.2.

■ Read together, the Constitution and the statutes grant the Commission broad discretion to assure the construction and maintenance of the state highway system. That discretion is not unbridled, however. The Commission's determination of necessity is limited by its grant of authority; the Commission may condemn property only for purposes necessary to the construction and maintenance of state highways.

Respondents rely heavily upon *State ex rel. State Highway Commission v. Pinkley*, 474 S.W.2d 46 (Mo.App.1971), which turns on this understanding of the limitation of the Commission's authority. *Pinkley* announces that Article IV, Section 30(b).1(5), does not afford the Commission authority to condemn private property for a state highway rest area. Because a roadside rest area is not necessary to the *construction* of a highway, the Court concluded that the Commission may not exercise eminent domain power for that purpose.

■ Respondents read Section 227.120(13) and *Pinkley* to impose a use restriction on the Commission. They claim that the Com-

mission cannot condemn land that is not *used* for a highway. In this they are mistaken. Section 227.120 speaks not of approved *uses* but of approved *purposes*. The statute's list of purposes includes several purposes which will not result in the *use* of land for a highway or even directly for the construction of it. All of the *purposes* do, however, ultimately relate to the construction or maintenance of highways.

In this case, the Commission faced federal mandates requiring it to replace wetlands its highway construction disturbed. Failure of the Commission to secure a federal permit would preclude the construction of Route 115 at the chosen site. Thus, the Commission's purpose in condemning the property directly related to highway construction and falls within the Commission's narrow authority to condemn property. Pursuant to Article IV, Section 30(b).1(5) and Section 227.120(13), we hold that the Commission has authority to meet the requirements of the federal government and, in furtherance of those requirements, condemn some land to replace wetlands disturbed by the construction of state highways, where necessary for the proper and economical construction of state highways.

## B.

Having determined that the Commission has authority to condemn *some* land to replace disturbed wetlands as required by the federal government, the question remains whether the Commission properly selected and condemned respondent's land. The trial court did not reach this question because it found the Commission without authority to condemn any land for wetland replacement purposes.

We believe the appropriate course of action is to remand this case to the trial court to permit the respondents to pursue their claims that the Commission improperly selected the respondents' land to replace the disturbed wetlands adjacent to Route 115. In pursuing that claim, respondents face a daunting task. They must show that the Commission could not, upon consideration of the alternatives available to it, have reasonably chosen their land. *Wood v. Wagner*

*Electric Corporation,* 355 Mo. 670, 197 S.W.2d 647, 649 (1946). Moreover, if the evidence supports the Commission's decision, an appellate court must uphold that decision even if other alternatives were available to the Commission. *Osage Outdoor Advertising, Inc. v. State Highway Commission of Missouri,* 687 S.W.2d 566, 568 (Mo.App. 1984). Respondents can prevail against the Commission only if they can show an abuse of discretion so great as to deprive the taking of its public purpose. *State ex rel. Clothier v. Yeaman,* 465 S.W.2d 632, 633–634 (Mo. banc 1971); *State ex rel. State Highway Commission v. Eakin,* 357 S.W.2d 129, 134 (Mo.1962).

### III.

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.