**CITY OF RICHMOND HEIGHTS,**
Appellant,

v.

**Dorothy WAITE, Respondent,**

and

**Lamonica Wright, Nation One Mortgage Company, Inc., Michael J. Starrett, Trustee, Mers, and Unknown Husbands, Wives, Grantees, and Successors, Defendants.**

No. ED 91353.

Missouri Court of Appeals,
Eastern District,
Division One.

April 7, 2009.

James E. Mello, Jeffery T. McPherson, Cynthia A. Petracek, Armstrong Teasdale LLP, St. Louis, MO, for Appellant.

Steven E. Spoeneman, Spoeneman, Watkins, Waltrip & Harvell, L.L.P., St. Louis, MO, for Respondent.

Cynthia Garnholz, Garnholz & Ricci, L.C., St. Louis, MO, for Defendants.

KURT S. ODENWALD, Presiding Judge.

### Introduction

The City of Richmond Heights (the City) appeals from the trial court's judgment dismissing the City's condemnation action. The City seeks to condemn a parcel of property owned by Dorothy Waite (Seller) located within the Hadley Township Redevelopment Area. The trial court dismissed the City's petition based on its finding that the offer made by the City to purchase the property was not a binding offer, and that the City failed to engage in good faith negotiations as required by Missouri's condemnation statutes. We reverse.

### Background

The boundaries of the Hadley Township Redevelopment Area encompass Hanley Road on the west, Interstate 64 and Dale Avenue on the north, Laclede Station Road on the east, and West Bruno Avenue to the south. The City seeks to redevelop this area into a comprehensive, mixed use district consisting of both residential and commercial components. After developing a plan for the area and soliciting proposals from developers, the City selected Michelson Commercial Realty & Development (MCRD) as the developer.[1] The City and MCRD entered into an agreement authorizing MCRD and its agents to act on behalf of the City for the purpose of acquiring property in the redevelopment area. MCRD subsequently assigned its rights established in the development agreement to Michelson Hadley Heights Development, LLC (Michelson).

The property at issue in this case is a residential parcel located at 7915 West Bruno Avenue (Subject Property), owned by Seller. Seller currently leases Subject Property to a tenant. City Manager Amy Hamilton testified at the trial court's hearing that to the best of her knowledge, acquisition of Seller's property was necessary to carry out the City's comprehensive redevelopment plan.

On December 12, 2006, the City, through Michelson, offered to purchase the Subject Property for $175,000. The City communicated this offer by sending Seller a certified letter, which enclosed a proposed Purchase Agreement. The Purchase Agreement included a provision allowing Seller to recover liquidated damages upon the City's default. The liquidated damages clause allowed Seller to retain the $1000 earnest deposit and $5000 advance payment as liquidated damages, should the sale of the Subject Property not close due to the City's failure to perform. Under the proposed liquidated damages clause, the parties agreed "that the aforementioned amount is their best estimate of Seller's damages in such case, such damages being difficult if not [im]possible to ascertain." If the sale did not close because of Seller's failure to perform, the City, as purchaser, would be entitled to receive from Seller the previously paid earnest money and advance payment, and all remedies "available at law or in equity, including, but not limited to, the right to obtain specific performance of this Agreement."

Seller rejected the City's offer of $175,000 and made a counteroffer of $355,200 on January 8, 2007. In response to Seller's counteroffer, the City raised its offer to $200,000. In responding to Sell-

---

1. Although MCRD is no longer the developer for this project, mootness is not an issue before this Court. The City is the condemning authority and still seeks condemnation of the area in question, regardless of the developer subsequently chosen for this project.

er's proposal, the City noted that its appraisal estimated the Subject Property's value at $140,000, but it was offering $200,000 "[i]n an effort to resolve this issue quickly." With its response, the City sent Seller another proposed Purchase Agreement, which included an identical liquidated damages clause.

On January 28, 2007, Seller again rejected the City's offer and counter-offered with an asking price of $300,000 for the Subject Property. Additionally, Seller requested mediation, but stated that the request "is only valid if we are unable to reach an agreement on Monday, January 29, 2007." In an attempt to move forward with the requested mediation, the City proposed a mediator in a letter on February 9, 2007. When the City had "not received a response to [its] letter or [ ] phone calls," it mailed another letter to Seller on February 22, 2007. The letter communicated the City's assumption that Seller was no longer interested in mediation. On March 13, 2007, Seller responded that she was "prepared to engage in mediation" if the City was "open to payment of a valuation amount in excess of its recent offer" of $200,000. On March 22, 2007, the City countered that it did "not believe that any renewed request for mediation by [Seller was] timely." However, the City indicated its willingness to entertain an offer from Seller, even though it believed its offer of $200,000 exceeded the Subject Property's fair market value. No written response was made by Seller. In May 2007, the City sent Seller a letter offering $140,000 for the Subject Property, accompanied by an appraisal summary and a proposed Purchase Agreement. The Purchase Agreement again contained a liquidated damages clause.

The City filed a Petition in Condemnation on July 17, 2007, alleging that the City made a good faith offer to Seller to acquire and purchase the Subject Property, but the parties "have been unable to reach an agreement for the purchase of [the Subject Property] or for the proper compensation to be paid for the same." Thus, the City requested that the trial court enter a judgment and order condemning the Subject Property.

On July 25, 2007, Seller agreed to consent to judgment under the Petition in Condemnation upon a stipulation that the Seller would receive $250,000 for the Subject Property. In August 2007, the City rejected Seller's demand and offered $225,000 to Seller for purchase of the Subject Property "in complete and full settlement of this action." The City filed a First Amended Petition in Condemnation on October 11, 2007.

Finally, Seller sent a letter to the City on October 24, 2007, stating that she would "agree to confess [the City's] condemnation . . . and stipulate to an award of damages without the necessity of appointment of commissioners or hearing, in exchange for payment of $225,000 with both parties reservation to file exceptions to the stipulated commissioner's award." However, Seller also stated, "Alternatively, [Seller] will accept full and final settlement of all claims and complete sale for the agreed sale price of $325,000, provided there are some agreeable deadlines concerning the timing and closing of sale."

The parties were unable to reach an agreement on the purchase price. On December 14, 2007, a hearing was held in the Circuit Court of St. Louis County. Following the close of the evidence on the condemnation, Seller reversed her prior position and willingness to confess the condemnation, and opposed the order of condemnation. Seller's stated opposition to the condemnation was based upon her argument that the inclusion of the liquidated damages clause in the Purchase Agreement allowed the City to terminate the

contract unilaterally, and rendered the Purchase Agreement "nothing more than an option to purchase," which failed to meet the statutory requirement for the purchase of property under Missouri's condemnation laws. Seller argued that the Purchase Agreement at issue was not an unconditional offer because if the City chose not to complete the process of condemnation, it could walk away from the contract with the minimal consequence of allowing Seller to retain the $5000 advanced payment and $1000 earnest deposit.

At the trial court's request, the parties submitted further briefs on the issue. In her brief, Seller again argued that the City was unable to meet its burden and prove good faith negotiation as required by Section 526.256, RSMo 2000,[2] which obligates a condemnor to make an offer to purchase sufficient to create a binding contract if accepted. The City countered that the Purchase Agreement imposed an obligation on it to acquire the Subject Property, and that the liquidated damages clause simply provided a remedy to Seller if the City breached this obligation.

The trial court entered its judgment dismissing the City's condemnation petition on January 28, 2008. The trial court reasoned that although none of the authorities cited by the parties were on point, it agreed with Seller that the liquidated damages provision within the Purchase Agreement rendered the offer not binding, and therefore was unenforceable. The trial court held that "[u]nder [the City's] offer, the property owner [Seller] may not compel the [City] to perform and is limited only to nominal, liquidated damages as the exclusive remedy. This does not constitute 'good faith negotiations' on the part of the condemning authority, as interpreted by the Courts."

The City filed its timely notice of appeal from the trial court's judgment on May 9, 2008.

### Point on Appeal

In its sole point on appeal, the City alleges that the trial court erred in dismissing the condemnation petition because the dismissal erroneously declares and applies the law without proper evidentiary support. The City claims that the liquidated damages provision at issue did not make the Purchase Agreement non-binding and unenforceable; nor did the liquidated damages provision demonstrate the City's lack of good faith negotiations. Rather, the City asserts that the evidence demonstrates that it, through the project developer, satisfied the statutory elements of good faith negotiations required to support the condemnation of property. We agree.

### Standard of Review

When the issue to be determined on appeal is a question of law, such as issues of statutory interpretation, no deference is due to the trial court's judgment and our review is *de novo*. *Hunter v. County of Morgan*, 12 S.W.3d 749, 755 (Mo.App. W.D.2000).

### Discussion

Our analysis of the matter before us is dictated by the requirements imposed upon condemning authorities under Chapter 523, which governs the manner in which private property may be appropriated for public use. The facts of this case present questions under two particular provisions of Missouri's condemnation statutes that were enacted in 2006 as part of the Missouri legislature's eminent domain reform in an attempt to provide greater

**2.** All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

protections for property owners whose property was facing condemnation. Under Section 523.253, before a condemning authority may initiate condemnation proceedings, it must "present a written offer to all owners of record of the property." Section 523.253. This provision further details various requirements as to when and how the offer must be made. In addition, Section 523.256 precludes a court from entering an order of condemnation unless it finds "that the condemning authority engaged in good faith negotiations prior to filing the condemnation petition." Section 523.256. This provision further describes the requirements placed upon the condemning authority before it can be deemed to have engaged in good faith negotiations.

The trial court's Judgment dismissing the City's Petition in Condemnation implicates the statutory protections granted to Seller under each of these provisions. In its Judgment, the trial court determined that the City did not make a binding offer, which on its face implicates the requirements imposed on the City under Section 523.253. The trial court reasoned that the inclusion of the liquidated damages clause rendered the Purchase Agreement unenforceable, and therefore not a binding offer. Accordingly, the trial court found that the City had not engaged in "good faith negotiations," which implicates the mandate of Section 523.256. Our review of the record and Judgment leads us to conclude that the trial court failed to differentiate between the separate requirements of Section 523.253 and Section 523.256. While we understand the trial court's reasoning, and are sympathetic to the result achieved by its Judgment, we are constrained to review the trial court's action in light of the express statutory scheme enacted by the legislature under each of these provisions. In so doing, we are compelled to reverse the trial court's Judgment.

*Did the City Present a Written Offer as Required Under Section 523.253?*

█ Section 523.253 requires a condemning authority to present a "written offer" to owners of record, which offer shall remain open for a thirty-day period. Section 523.253.1. The statute further provides that the offer must be accompanied by an appraisal from a state-licensed or certified appraiser. Section 523.253.2. It is not disputed that the City complied with the procedural requirements of Section 523.253 in that it presented the Purchase Agreement to Seller in a timely manner and with the required appraisal. The only issue for our review under Section 523.253 is whether the Purchase Agreement was sufficiently binding upon the City so as to constitute an offer.

█ We recognize that the presence of a liquidated damages clause may, in some circumstances, deprive a contract of the required mutuality of obligations so as to make the agreement unenforceable. *See Hawkins v. Foster,* 897 S.W.2d 80, 85 (Mo. App. S.D.1995) (noting that Missouri has adopted the Restatement of Contracts provisions regarding liquidated damages and, as such, a liquidated damages provision "fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty," while "[a] term that fixes an unreasonably small amount as damages may be unenforceable as unconscionable"). However, we are not persuaded that the liquidated damages clause contained in the City's proposed Purchase Agreement rendered the agreement unenforceable or non-binding. To the contrary, we find the proposed Purchase Agreement imposed legal obligations upon the City, and met the requirements of a "written offer" under Section 523.253.

The City argues a liquidated damages clause is valid and enforceable under general contract law, and that the inclusion of

such clause in the proposed Purchase Agreement did not make the agreement non-binding and unenforceable. Seller has provided no judicial authority supporting the proposition that the mere presence of a liquidated damages clause, without regard to its substance, deprives an agreement of the necessary mutuality of obligation, and renders said agreement unenforceable. Without any statutory directive, we find no basis to depart from this fundamentally accepted principle of contract law because the parties before us are jousting in the arena of condemnation and eminent domain.

Section 523.010 authorizes the filing of a condemnation proceeding only in cases where the condemnor and property owners cannot agree upon the proper compensation to be paid. *See also City of Blue Springs v. Cent. Dev. Ass'n,* 684 S.W.2d 44, 48–49 (Mo.App. W.D.1984). Because "[n]ecessity is the underlying basis for the sovereign's exercise of the power of eminent domain," a condemning authority must prove "that negotiations have been attempted and have failed." *State Highway Comm'n v. Cady,* 372 S.W.2d 639, 642 (Mo.App.1963). It logically follows, then, that because the burden of proving the parties' inability to agree falls on the condemnor, the condemnor's evidence must show that a valid offer was made by one party and rejected by the other. *State Highway Comm'n v. Pinkley,* 474 S.W.2d 46, 49 (Mo.App.1971).

The requirement that a written offer be made as a prerequisite to the filing of a condemnation proceeding was codified by the legislature in 2006 with the enactment of Section 523.253. Neither this provision, nor any other provision of the legislative attempt to affect eminent domain reform in Missouri in 2006, addresses the legal significance of including a liquidated damages clause in the written offer made by the condemning authority. Accordingly,

we are guided by the general principles of contract law as developed in Missouri courts through the years.

Central to our analysis is the accepted principle of law that liquidated damages clauses are valid and enforceable, whereas penalty clauses are not. *Diffley v. Royal Papers, Inc.,* 948 S.W.2d 244, 246 (Mo.App. E.D.1997). "Liquidated damages provisions are frequently utilized in real estate contracts because actual damages are often 'uncertain in amount and difficult to ascertain or prove.' " *Warstler v. Cibrian,* 859 S.W.2d 162, 165 (Mo.App. W.D.1993) (internal citation omitted). A penalty provision specifies a punishment for default, while liquidated damages are provided as a measure of compensation that, at the time of contracting, the parties agree will represent damages in the event of a breach. *Diffley,* 948 S.W.2d at 246. For a damage clause to be valid as setting liquidated damages, the amount fixed as damages must be a reasonable prediction for the harm caused by the breach and the harms must be of a kind difficult to estimate accurately. *Id.* In determining whether an agreement sets forth liquidated damages or a penalty, this Court looks to the intent of the parties as determined from the contract as a whole. *Id.* at 246–47. The provision must be fixed on the basis of compensation, or else it is construed as a penalty clause primarily designed to compel performance. *Id.* at 247.

In her brief filed with the trial court, Seller challenged the City's offer and characterized it as a non-binding and illusory offer due to the inclusion of the liquidated damages clause. Seller argued before the trial court that *Pinkley* was instructive on this issue. In *Pinkley,* the appellate court held that the language of the Highway Commission's offer to purchase the property at issue provided an "out" for the

condemning authority to escape its obligations if it unilaterally elected to do so. *Pinkley,* 474 S.W.2d at 50. Because there was no valid offer made by the condemning authority, the appellate court found there was no refusal by the landowner to accept its illusory offer. *Id.* We are in agreement with the court's holding in *Pinkley,* but find that it has no application in the case before us. Critical to the *Pinkley* court's ruling was the fact that the offer made to the landowner by the Commission's employee was conditioned upon the subsequent approval of the State Highway Commission. The ruling of the *Pinkley* court focused heavily upon the conditional language, which the court found "effectively refutes any contention that the exhibits may be considered as valid offers made by the Commission." *Id.* at 49–50.

We fail to recognize any reasonable comparison of the facts and holding in *Pinkley* to the issue presented in this appeal. Seller's argument to the trial court ignores the distinct difference between the contrasted language of these cases. In *Pinkley,* the "offer" made by the condemning authority to the property owner had not been approved by the required governmental authority, the State Highway Commission. Any acceptance of said offer by the property owner could not create a binding agreement, and provided the Highway Commission the opportunity to "back out" of the purchase of the property without any legal consequence. The lack of any obligation on the part of the condemning authority was essential to the court's finding of an illusory offer. To the contrary, here the liquidated damages clause contained in the City's proposed Purchase Agreement did not allow the City to withdraw from the relationship without legal consequence. Unlike the contractual language at issue in *Pinkley,* the liquidated damages clause in the City's proposed Purchase Agreement did not provide an "out" for the City, and did not create an unenforceable offer.

The record before us supports a finding that the City made a written offer to purchase Seller's property. The trial court found that the inclusion of a liquidated damages clause, "while understandable from a business point of view, is not a binding offer to purchase the property and, therefore, is not enforceable." We disagree. A liquidated damages clause is generally acknowledged and accepted as a valid means of compensating a party for the other party's breach. *Warstler,* 859 S.W.2d at 165. Accordingly, we do not find the inclusion of a liquidated damages clause alone renders the City's proposed Purchase Agreement to be a non-binding offer under Section 523.253.

The trial court's view of the amount of liquidated damages as "nominal," and not the mere presence of a liquidated damages clause, appears to be the underlying basis for its decision. We are not persuaded that a liquidated damages clause allowing the Seller to retain $6000 and ownership of her property is "nominal" or otherwise renders the City's promises illusory. As is noted by the City, the proposed Purchase Agreement describes the agreement to sell the Subject Property, the closing date, the purchase price, the documents to be delivered at closing, the agreement's enforceability in the event of damage to the property, remedies and attorney fees in the event of default, the Seller's representations and warranties, and miscellaneous agreements including an integration clause and choice of law, all of which are definite terms that do not afford the City or Seller an opportunity of escaping their obligations without recourse. While the inclusion of the liquidated damages clause and its "low-dollar figure" relative to the total price at issue may cause Seller some concern that the City has little risk should it

breach the contract, this risk is distinguished from a prohibited penalty or an illusory offer, and is intended to provide a measure of compensation. It is often difficult to ascertain or prove damages resulting from a failed contract in a condemnation proceeding. Having one's property tied up in a condemnation proceeding may present a real loss to a property owner. Balancing the intangible harm caused by the anxiety of a forced move and the personal loss of one's property against the property owner's retention of the property and the opportunity to enter into future contracts relating to said property cannot be measured by any methodical formula. Moreover, when the condemnation is part of a redevelopment plan, the property owner's damages also may stem from the condemning authority's conduct with neighboring property owners. The practical inability to estimate damages that may flow from a breach of contract in this situation underscores the utility of a liquidated damages clause.[3] The City's proposed Purchase Agreement complied with the requirements of Section 523.253.

*Did the City Engage in Good Faith Negotiations?*

▬▬ Having determined that the City made a written offer in compliance with Section 523.253, we now consider whether the trial court properly held that the City did not engage in good faith negotiations under Section 523.256.

"Good faith negotiations" under Section 523.256 requires that 1) the condemning authority properly and timely gives notice to owners as required by Chapter 523; 2) the offer under Section 523.253 not be lower than that amount reflected in the state-licensed or state-certified appraiser's appraisal, which must have been given to

the property owner, or the offer not be lower than the amount provided in the basis for its determination of the property's value; 3) the owner have the opportunity to obtain his or her own appraisal from a state-licensed or state-certified appraiser; and 4) where applicable, the condemning authority considers an alternate location suggested by the property owner under Section 523.265. Under the express terms of Section 523.256, the City, as the condemning authority, will be deemed to have engaged in "good faith negotiations" if it meets these requirements. Our inquiry into the City's "good faith" is limited to the following questions: Did the City give Seller the required notices? Did the City make an offer that was not less than the amount reflected in its appraisal? Did Seller have an opportunity to obtain her own appraisal? Did the City consider alternate locations that may have been suggested by Seller? If the answer to these questions is yes, the City has met the statutory requirements of good faith negotiation as expressly defined under Section 523.256.

Incorporated into the statutory requirements for good faith negotiation is the prerequisite that an "offer" pursuant to Section 523.253 has been extended to Seller. Only if the offer mandated by Section 523.253 has been given to Seller do we consider whether the condemning authority engaged in good faith negotiations under Section 523.256. The separateness of these concepts is blurred by the trial court as it failed to analyze "good faith negotiation" under the precise statutory provisions of Section 523.256, but focused instead upon its finding that the proposed Purchase Agreement was not a binding

---

3. The record does not reflect any attempt by Seller to negotiate the terms of the liquidated damages clause even though Seller repeatedly sought to negotiate the purchase price for the property. Seller's conduct in this regard reasonably may be seen as an acknowledgment that Seller viewed the amount of the liquidated damages as fair and equitable.

offer due to the liquidated damages cause. Were the trial court correct in its assessment of the Purchase Agreement, we would affirm its Judgment under Section 523.253, and need not undertake any analysis of whether the City engaged in "good faith negotiation." However, as noted above, the proposed Purchase Agreement offered by the City was an agreement imposing obligations on the City that were not rendered either unenforceable or nonbinding due to the inclusion of a liquidated damages clause. Because we find that the City met its obligations as a condemning authority under Section 523.253, we must next consider whether the trial court properly applied the law when it found the City did not engage in good faith negotiations as is required under Section 523.256.

■■■ Despite our understanding of the difficult position in which the Seller finds herself, we are constrained by the requirements of good faith negotiations as set forth in Section 523.256. The inclusion of a liquidated damages clause in an offer to purchase does not demonstrate a lack of good faith under Section 523.256. Instead, the record supports a finding that the City met its good faith obligations under Section 523.256 when 1) the City properly and timely gave notice to Seller as required by Chapter 523; 2) the City's offer under Section 523.253 [4] was not lower than $140,000, the amount reflected in the appraisal, which was provided to the property owner; and 3) Seller was given the opportunity to obtain her own appraisal.

■■■ We note that the statutory scheme defined by the legislature narrowly defines what constitutes "good faith negotiations" and does not necessarily equate to the broader principles of "good faith" as applied to contracts under general contract principles. While property owners forced to sell their property in a condemnation proceeding are severely disadvantaged in relation to parties involved in a private sale of property, the law does not recognize a distinction between these types of transactions, except as provided under Chapter 523. Where there is no conflict between the provisions of Chapter 523 and the general principles of contract law as developed in Missouri courts, we will apply the generally accepted principles of contract law. However, when the legislature has seen fit to modify the principles of contract law by statute, we must follow the legislative mandate. *See N.E. & R. P'ship*

---

4. We agree with the City that an "offer" described in Section 523.253 is distinct from "good faith negotiations" as set forth in Section 523.256. Section 523.253, regarding written offers, requires:

1. A condemning authority shall present a written offer to all owners of record of the property. The offer must be made at least thirty days before filing a condemnation petition and shall be held open for the thirty-day period unless an agreement is reached sooner. The offer shall be deposited in the United States mail, certified or registered, and with postage prepaid, addressed to the owner of record as listed in the office of the city or county assessor for the city or county in which the property is located. The receipt issued to the condemning authority by the United States Post Office for certified or registered mail shall constitute proof of compliance with this requirement; provided, however, that nothing in this section shall preclude a condemning authority from proving compliance with this requirement by other competent evidence. Nothing in this section shall prohibit the parties from negotiating during the thirty-day period.

2. (1) Any condemning authority shall, at the time of the offer, provide the property owner with an appraisal or an explanation with supporting financial data for its determination of the value of the property for purposes of the offer made in subsection 1 of this section.

(2) Any appraisal referred to in this section shall be made by a state-licensed or state-certified appraiser using generally accepted appraisal practices.

v. *Stone,* 745 S.W.2d 266, 267–68 (Mo.App. S.D.1988) ("In construing a statute a principle generally followed is that common law rules are not changed except by the express terms of a statute or by necessary implication."). The Missouri legislature may want to consider provisions addressing the impact of a liquidated damages clause in a condemnation proceeding. However, until that occurs, we are constrained to apply the general contract principles relating to such clauses. At the same time, because the Missouri legislature has determined what constitutes "good faith negotiations" in the context of a condemnation proceeding, we are similarly constrained to follow that legislative determination.

Accordingly, we find that the $6000 amount fixed as liquidated damages is a reasonable prediction for the harm caused by a breach. We hold here that the surrender of the liquidated damages does nothing other than compensate Seller for a fixed reasonable amount of the harms caused by any breach by the City. The liquidated damaged clause does not strip the trial court of its jurisdiction in this condemnation proceeding under either Section 523.253 or Section 523.256.

### Conclusion

The judgment of the trial court is reversed and the case is remanded to the trial court for further proceedings.

GLENN A. NORTON, J., and PATRICIA L. COHEN, J., concur.